## GALBREATH, STEWART & CO. *v.* DAVIDSON.

MECHANICS' LIEN—*a wharf-boat subject thereto.* A wharf-boat is *subject* to the mechanics' statutory lien. A wharf-boat is attached to the soil, and savors of the realty.

It is a good plea in bar to an action to enforce a *mechanics' lien* that the claimant was the ostensible owner of the property at the time of the alleged repairs, and that he never authorized the repairs to be made.

Where it is necessary, to enable the plaintiff to recover, that all the issues made should be found in favor of the plaintiff, it is *error* to instruct the jury that if either of the issues is found in his favor he must recover.

*Error to Desha Circuit Court.*

Hon. JOHN E. BENNETT, Circuit Judge.

WATKINS & ROSE, for plaintiffs in error.

Unless a bailee has the power to contract for repairs, he can not bind the property by mechanics' lien. *Hauptman v. Catlin*, 1 *E. D. Smith*, 734; *Story Agency, sec.* 77, *and cases cited.*

The statute (*Gould's Dig.*, ch. 112) confines the mechanics' lien to "work and labor on any *building, edifice or tenement.*" Neither of these terms could apply to a boat.

The statute being greatly in derogation of the common law, shall receive a strict construction. The mechanics' lien will not be extended beyond the strict letter of the statute. *Brady v. Anderson,* 24 *Ill.,* 110 ; *Farmer's Bank v. Winslow,* 3 *Minn.,* 86 ; *Cook v. Heald,* 21 *Ill.,* 425 ; *Logan v. Attix,* 7 *Clarke,* (*Iowa,*) 77 ; *Lord v. Woodward,* 42 *Maine,* 497.

In *Walker v. Anschutz,* 6 *Watts & S.,* 519, it was expressly held that the mechanics' lien had no application to boats.

PINDALLS and ENGLISH, GANTT & ENGLISH, for defendant.

"The doctrine of mechancis' lien rests on the broad foundation of natural equity and commercial necessity. Nothing is more reasonable than that the artificer or business man should have a qualified property in the thing on which he has bestowed his time and labor, and into which he has incorporated his materials." *Houck on Liens,* 38.

"All remedial statutes are liberally construed, and to this class belong mechanic lien laws." "Mechanics are favored by the courts." *Swan v. Story,* 4 *Metcalf,* (*Ky.,*) 316.

In *Tuttle v. Montford,* 7 *California Reports,* 360, the court gave as the reason for the latitude allowed in construing the statutes in favor of mechanics, "that they have, at least in part, created the very property upon which the lien attaches." And in *Holliday v. Cromis,* 2 *California,* 60, the subject of controversy was a wharf, built on piles driven in the water; the lien was sustained.

GREGG, J.

On the 3d day of June, 1868, Davidson filed, in the office of the clerk of the circuit court of Desha county, his account for $1,048$\frac{78}{100}$, and claimed a mechanics' lien for that sum, for materials, work and labor, in repairing a wharf-boat, under a con-

tract with Loftin H. Nunn. On the 25th of September he sued out a *scire facias* to enforce such lien, which was served on Nunn, and returned to the October term, 1868, of the court, at which time Galbreath, Stewart & Co., appeared, claimed the boat, were made defendants, and filed three pleas.

The pleas were in substance: 1. That Galbreath, Stewart & Co. were the owners of the boat, but that, at the date of the repairs, &c., A. S. Dowd was owner; that the contract was made, repairs done, &c., without any authority from Dowd.

2. That, when said work was had and done, Galbreath, Stewart & Co. were the true and ostensible owners of the boat, and that they are still such owners, and that such labor, etc., was had and done, and the contract therefor made, without any authority from them.

3. That Nunn did not undertake and promise, as alleged, &c.

Davidson took issue upon the first and third pleas, and demurred to the second. The court sustained the demurrer; Galbreath, Stewart & Co. rested; a jury was called, and trial had upon the issues to the first and third pleas; verdict and judgment had in favor of Davidson, for the amount of his claim. Galbreath, Stewart & Co. excepted to the giving of the first, second and third instructions for Davidson, and the refusing to give the first, second, third and sixth instructions asked by them. They moved for a new trial; their motion was overruled; they excepted thereto, and took their bill of exceptions, setting out all the evidence, and brought error.

The first error complained of was the sustaining the demurrer to their second plea. We see no valid objection to that plea, if Galbreath, Stewart & Co. were the owners of the boat, really and ostensibly, as averred, thus openly exhibiting their title, and gave no authority for such repairs, they are not liable therefor; and one who would attempt to make gain by meddling with their property, thus openly or " ostensibly " held, without their direct or indirect consent, would, of course, lose any labor or material he might so expend. But the evidence now before the court shows most clearly that such were not the

facts; that, if Galbreath, Stewart & Co. were the owners, they were secretly so. In no sense were they ostensible owners. They made no record or other public evidence of their title; they exercised no control over the boat; made no claim to it, or the rents and profits from it; and Nunn, who had entire charge of the boat, had no knowledge of any such ownership or claim. Yet, they had a right to aver such facts, and if they can sufficiently prove their title and non-consent, the defense will be a good one.

In giving the instructions for Davidson, the court seemed to misapprehend the law arising upon the issues to the separate pleas of Galbreath, Stewart & Co., and instructed the jury on each issue, that, if they found that issue in favor of Davidson, they must assess his damages, &c., to the effect, that if either issue was found for the plaintiff, he must recover, when evidently the judgment would have been for the defendants therein, if any one of the issues had been found for them. One good plea, sufficiently proved, will defeat an action. These instructions were substantially good, but for this error.

The third and last ground assigned as error is, the refusal of the court to give the first, second, third and sixth instructions of Galbreath, Stewart & Co.; which instructions, in effect, required the court to declare a wharf-boat personal property, and not subject to a mechanics' statutory lien. The statute declares that all artisans, builders and mechanics, who shall perform work, &c., on any building, edifice or tenement for the owner or proprietor, &c., shall have an absolute lien on such building, edifice or tenement, for such work and labor, as well as for all materials furnished, &c., and for all sums of money paid on account of materials furnished and used about such work, &c. See *Gould's Digest, p.* 768.

While it is true that this is a statutory proceeding, and can not be construed to apply remedies beyond the declared intent and meaning of the Legislature, a large majority of the State courts have holden that such are meritorious remedial laws, and should have a liberal interpretation. They should be so

construed as not to defeat the spirit, true intent and meaning of the acts, and that such laws have been wisely enacted to encourage valuable and permanent improvements, and to secure the industrious mechanic his reasonable reward. See *Patrick v. Vallentine*, 22 *Mo.*, 148; *Barnes v. Thompson*, 2 *Swan.*, 315; *Tuttle v. Manford*, 7 *Cal.*, 360; *and* 2 *Cal.*, 60; *Buck v. Brian*, 2 *Howard*, (*Miss.*,) 88; *Houck on Liens*, 38, and cases there cited.

Such laws were not intended to create liens upon mere personal chattels, but upon lands or things in some manner attached to the realty; not to embarrass commerce, or hinder the ready exchange of purely personal property, but to secure the erection of valuable structures, and protect the interests of him who may furnish materials and build the same.

The application of the law in this case is not entirely free from difficulty. Is a wharf-boat a mere personal chattel, or does it savor of the realty? Is it so attached to the soil as to support such lien? We are of the opinion that it is.

When the term boat is used, we are likely to catch the idea of locomotion—of passing, or transportation from one point to another—without hesitating to inquire whether that term is ever applied to other structures, which have no power of locomotion, no propelling force, by which they can move or be moved from point to point. It may be said the fastenings are easily cut, and a wharf-boat can be readily towed or floated away. So may a house be placed on rollers, and speedily hauled upon other lands, but no one doubts a house being a fixture, simply because it is capable of being removed.

The riparian owner has a just claim to all the soil composing the bank of a stream, and no one can hold or use such soil upon the margin of a river, whether navigable or not, for the purpose of fastening or making safe any structure or building, against the will of such owner, and should any one attempt to so lodge such building upon the private soil of another, forcibly and against his consent, we suppose no attorney would deny but such an one might be ejected therefrom.

The location and maintaining of a wharf-boat must depend

upon its attachments to the soil. Such boat or building has no power to retain its position except its bank fastenings. It can not be severed from the soil without destroying the structure—at least its present local utility. Cut such structure loose from its moorings—from its connections—and it is as effectually ruined for all practical purposes, as is a house rolled away from its business location. To this extent it appertains to the realty. It rests against the bank. It supports upon the realty, and, unlike vessels that " plow the waters," it has no mobility—no apparatus to change place, or power to retain position—other than land fastenings. It is, in fact, but a floating business house, or rather a business house upon the surface of the water, and stationed by its cables. It is a building—a structure commonly used to facilitate the landing of boats and the storing of freight, and it may have sleeping apartments, may be dwelt in, and it is embraced within the spirit and meaning of our statute, declaring that such liens may be held on " any building, edifice or tenement." *Gould's Dig.*, sec. 1, *p.* 768. Hence, we are of opinion that the court below did not err in refusing to give the first, second, third and sixth instructions asked by Galbreath, Stewart & Co.

But, for the errors aforesaid, the judgment must be reversed, and the cause remanded for further proceedings, not inconsistent with this opinion.