## SOUTH CENTRAL DISTRICT OF THE PENTECOSTAL CHURCH OF GOD OF AMERICA, INC. *v.* BRUCE-ROGERS COMPANY

79-328                                        599 S.W. 2d 702
Supreme Court of Arkansas
Opinion delivered June 2, 1980

*Gean, Gean & Gean*, for appellant.

*Warner & Smith*, for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant, South Central District of the Pentecostal Church of God of America, Inc., brings this appeal upon the sole ground that the trial court erred in not holding that Act 146 of the General Assembly of 1895, as amended, digested as Ark. Stat. Ann. § 51-601 et seq (Repl. 1971), is unconstitutional because it violates the due process clause of Amendment 14 of the Constitution of the United States and Article 2, § 8 of the Constitution of Arkansas. Since we do not agree, we affirm the decree of the chancery court.

The particular facts involved are unimportant in our consideration of the issues on this appeal. The chancery court rejected appellant's arguments as to constitutionality of the statutes. Having done so, it entered a decree granting a judgment to appellee Bruce-Rogers Company, a supplier to a contractor engaged by appellant to install heating and air conditioning plants in a building owned by appellant. The judgment included a lien on the real estate improved by installation of the fixtures supplied.

Appellant contends that the pertinent statutes permit a taking of property without procedural due process required by the constitutional provisions invoked by appellant.

We are able to quickly dispose of the federal constitutional question. It seems to us that the matter has been laid to rest by the decision of a three-judge district court in *Spielman-Fond, Inc.* v. *Hanson's, Inc.*, 379 F. Supp. 977 (D.C., Ariz., 1973), aff'd. summarily 417 U.S. 907, 94 S. Ct. 2596, 41 L. Ed. 2d 208. The sole question before the district court was the constitutionality of the Arizona mechanics' and materialmen's lien statutes. There, as here, the attack, in essence, was the assertion that, in effect, the lien provided by the statutes cut off the owner's right to alienate his property, and that, as a result, the owner was deprived of a significant property interest without the benefit of prior notice or hearing. As we view the statutes, there is no material difference from the constitutional point of view. The mere fact that the Arizona statute may make a general contractor the agent of the owner while the Arkansas statute does not, does not afford a basis for distinction, as appellant contends. The Arizona district court did not consider that fact significant enough to mention in its opinion. The district court carefully analyzed the effect of *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969); *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), *Boddie* v. *Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971) and *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972), reh. den. 409 U.S. 902, 93 S. Ct. 1977, 34 L. Ed. 2d 165, all of which are relied upon by appellant. After having done so, that court concluded that the lien, by clouding the owner's title, might make it more difficult for the owner to alienate the proeprty, but that there was nothing that would prevent him from making a sale if he could find a willing buyer. The court also pointed out that the owner was not deprived of possession or use of his property, as was the case in *Sniadach*, *Goldberg* and *Fuentes*.

Since, on federal constitutional questions, we are a court inferior to the United States Supreme Court, we are bound by precedents established by that court. We take the summary affirmance of the three-judge court in the Arizona case to be binding precedent. That position has generally been taken by the lower federal courts. See, e.g., *B & P Development* v. *Walker*, 420 F. Supp. 704 (W.D., Pa., 1976); *In re Thomas A. Cary, Inc.*, 412 F. Supp. 667 (E.D., Va., 1976), aff'd. 562 F. 2d

47 (4 Cir., 1977); *Matter of Northwest Homes of Chehalis, Inc.*, 526 F. 2d 505 (9 Cir., 1975), cert. den. 425 U.S. 907, 96 S. Ct. 1501, 47 L. Ed. 2d 758 (1976); *In re Oronoka*, 393 F. Supp. 1311 (N.D., Me., 1975). At least one other state court of last resort has recognized that *Spielman-Fond* is binding precedent on the questions involved here. *Connolly Development Inc.* v. *Superior Court*, 17 Cal. 3d 803, 132 Cal. Rptr. 477, 553 P. 2d 637 (1976), appeal dismissed for want of substantial federal question, 429 U.S. 1056, 97 S. Ct. 778, 50 L. Ed. 2d 773 (1977). The reason this affirmance is binding precedent here is because it affirms a judgment on the identical question in a case within the mandatory appellate jurisdiction of the United States Supreme Court.

Our position that the precedent is binding is supported, rather than weakened, by the action of the United States Supreme Court with reference to *Roundhouse Construction Corp.* v. *Telesco Masons Supplies Co., Inc.*, 168 Conn. 371, 362 A. 2d 778 (1975), relied upon by appellant. In that case, the Connecticut Supreme Court distinguished *Spielman-Fond, Inc.* v. *Hanson's, Inc.*, supra, on the basis that an action for foreclosure of the lien must be filed within six months, and reasoned that this period seemed to offer the bare minimum of due process protection consistent with the extent of deprivation. The United States Supreme Court vacated the judgment and remanded the case ot the Connecticut Supreme Court for that court to determine whether the statutory procedure was in violation of the federal constitution or the state constitution or both, at 423 U.S. 809, 96 S. Ct. 20, 46 L. Ed. 2d 29 (1975). The Connecticut Supreme Court then held that the procedure violated both constitutions, at 170 Conn. 155, 365 A. 2d 393 (1976). The United States Supreme Court then denied certiorari because the judgment rested upon an adequate state ground, at 429 U.S. 889, 97 S. Ct. 246, 50 L. Ed. 2d 172 (1976). By its actions in the matter, it is reasonable to conclude that the United States Supreme Court considered its summary affirmance of the decision of the Arizona Supreme Court to be applicable, or the state ground would have been immaterial. The court could not have overlooked its action in *Spielman-Fond* because it had been specifically distinguished in the Connecticut court's first opinion and held inapplicable. Although a summary affir-

mance is an affirmance of the judgment only, it does prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided in the action in which the judgment was rendered. *Mandel* v. *Bradley*, 432 U.S. 173, 97 S. Ct. 2238, 53 L. Ed. 2d 199 (1977).

We now turn to the question whether our mechanics' and materialmen's lien statutes meet the due process requirements of the Arkansas Constitution. In this regard, the decisions of the United States Supreme Court are not controlling but they are persuasive. We find that the statutes in question do not violate the due process clause of the Arkansas Constitution.

In considering this question, we begin with the presumptions which prevail in every consideration of a statute's constitutionality. Every act carries a strong presumption of constitutionality and, before it will be held unconstitutional, the incompatibility between it and the constitution must be clear. *Davis* v. *Cox*, 268 Ark. 78, 593 S.W. 2d 180, *Jones* v. *Mears*, 256 Ark. 852, 510 S.W. 2d 857; *Carter* v. *State*, 255 Ark. 225, 500 S.W. 2d 368. Every reasonable doubt must be resolved in favor of constitutionality. *Williams* v. *State*, 253 Ark. 973, 490 S.W. 2d 117; *Davis* v. *Cox*, supra. The fact that a statute has been in effect for a long period of time without its validity having been questioned, while not conclusive, is highly persuasive of its constitutional validity. *Williams* v. *State*, supra. Our basic statute was passed in 1895 and amended in 1899, 1923, 1961 and 1969. No attack has been made on it until recently.

Due process of law is a compound of history, reason and the past course of judicial decisions; it is neither an inflexible procedure universally applicable to every imaginable situation nor a technical concept with a fixed content unrelated to time, place and circumstance. *Cafeteria & Restaurant Workers* v. *McElroy*, 367 U.S. 886, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961). Not only are due process requirements not technical or inflexible, they depend upon the nature of the matter or interest involved. *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969); *Mathews* v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Board of*

*Regents* v. *Roth*, 408 U. S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Bell* v. *Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90; *Goss* v. *Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *Hutchison* v. *Bank of North Carolina*, 392 F. Supp. 888 (M.D., N.C., 1975). This concept was given articulate expression by Chief Justice Burger, who spoke for the United States Supreme Court in *Morrissey* v. *Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). He said:

> \*\*\* Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Union* v. *McElroy*, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743 (1961). To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.

Due process of law does not mandate a hearing in every case of governmental action impairing private interests. *Stanley* v. *Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972).

In arriving at the conclusion that our statutes do not violate the due process provision of our own constitution, and in balancing the various factors weighing upon a determination of how much process is due, we must give consideration to the purposes of the legislation and the rights of the creditor as well as the position of the property owner. As early as 1869, we said that the purpose of such acts was to secure the erection of valuable structures and protect the interests of those who may furnish materials and build the same.

*Galbreath, Stewart & Co.* v. *Davidson*, 25 Ark. 490. Since the earliest days of its existence, this state has consistently maintained an interest in protecting the interests of laborers and materialmen who contribute so much to the enhancement of the value of property on which their labors and supplies are utilized. See, Revised Statutes of Arkansas (1838), Chapter 96 (Act approved and in effect February 23, 1838).

In considering the Arkansas statutes in *Chauncey* v. *Dyke Bros.*, 119 F. 1 (1902), the Court of Appeals for the Eighth Circuit, said:

> *** The lien law in question is a remedial statute. It was enacted to secure to laborers, artisans, and others who perform labor or furnish materials for the erection of buildings on the land of others, payment for such services and materials, by giving them a lien on the structures which they have helped to create, instead of compelling them to rely merely on the personal security of the debtor. That such laws are fair and just, and that they also tend to encourage the erection of buildings by insuring payment for the labor and materials that are expended in their erection, has been generally recognized. ***

It is clear that state action is involved in the lien procedures and that there is a governmental interest in providing a procedure for the protection of mechanics, builders, artisans, workmen, laborers, and furnishers of materials, fixtures, engines, boilers or machinery from the danger of loss by disposition of property to the value of which they have made substantial contribution.

The statutory procedures invovled must be examined, however, in the light of the competing interests of the "debtor," the "creditor" and the public, and a determination made whether they reasonably accommodate and balance competing interests involved. *Connolly Development, Inc.* v. *Superior Court*, 17 Cal. 3d 803, 132 Cal. Rptr. 477, 553 P. 2d 637 (1976); *Hutchison* v. *Bank of North Carolina*, supra. See also, *Goldberg* v. *Kelly*, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970); *Mullane* v. *Central Hanover Bank & Trust Co.*, 339

U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950); *Mathews* v. *Eldridge*, supra; *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

In considering these competing interests many years ago, another court, in *Jones* v. *Great Southern Fireproof Hotel Co.*, 86 F. 370 (6 Cir., 1898) [reversed and remanded on jurisdictional grounds, 177 U.S. 449, 20 S. Ct. 690, 44 L. Ed. 842 (1900)], holding the Ohio mechanics' and materialmen's lien constitutional, gave us considerable guidance, saying:

> *** In paying off such claims, the owner may, if he exercises proper precaution, pay only his own debt to the contractor. If he be required to pay such subcontractors when nothing is due the principal contractor, it is his own fault. That the liability of the owner in respect to building contracts is restrained in some degree by this statute must be admitted. If he pay in advance, or contract to pay in property, or by an exchange of paper, and his contractor be dishonest or insolvent, he may find himself involved by the contractor's debts for labor or supplies. This contingency he may not always be able to guard against. But as much may be said of those who furnish labor or materials at the instance of the contractor. Without the lien they must look alone to the contractor, and may not always be able to protect themselves. Inasmuch as the owner actually gets the benefit of their contributions to his property, their equity is a strong one, and the legislature has, in its discretion, determined to cast upon the owner the responsibility of guarding against the defaults of a contractor selected by himself. To protect the class having this equity, the making of building contracts has been regulated. The restraints upon the owner are neither arbitrary nor oppressive; nor are they, under this Ohio statute, any more onerous than required by the necessity of protecting those who actually do the work or furnish the materials by which the owner is benefited. To permit such persons to follow and recover their contributions in kind would be futile to them, and disastrous to the owner. ***

In ultimately affirming this decision after jurisdiction was established, the United States Supreme Court referred to the able and elaborate opinion of the Circuit Court of Appeals, stated that the reasons for holding that the Ohio statute did not deprive the owner of his property without due process of law were cogently stated in that opinion and contented itself by reference to that opinion and citation of additional authority in support of the views there expressed. *Great Southern Fireproof Hotel Co.* v. *Jones*, 193 U.S. 532, 24 S. Ct. 576, 48 L. Ed. 778 (1904).

The Colorado Supreme Court, in *Bankers Trust Co.* v. *El Paso Pre-Cast Co.*, 192 Colo. 468, 560 P. 2d 457 (1977), has pointed out a factor of some significance in seeking to find accommodation of the competing property interests involved. It said:

> To require the full panoply of due process protections before filing a lien statement would impair the notice function of the lien statements. In the interval between the time of the work, the furnishing of materials or services giving rise to the lien claim and the hearing on the lien, prospective purchasers would have no notice of the potential lien. The very "deprivation" complained of by Bankers, the difficulty in alienating property against which a lien has been filed, indicates the effectiveness and importance of the notice function of lien statements.

The general public interest in affording protection to laborers, mechanics and materialmen against deprivation of compensation for their contributions to enhancement of the value of an owner's property is certainly a factor to be considered in determining the necessity for notice and a hearing prior to imposition of the lien. *Fuentes* v. *Shevin*, supra; *Cook* v. *Carlson*, 364 F. Supp. 24 (S.D., S.D., 1973); *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, 235 Ga. 727, 221 S.E. 2d 433 (1975); *Carl A. Morse, Inc.* v. *Rentar Industrial Development Corp.*, 56 A.D. 2d 30, 391 N.Y.S. 2d 425 (1977). Clearly, the laborer, mechanic or supplier would suffer the danger of a grave deprivation, if an owner could dispose of property made valuable by labor done or materials supplied by the holder of the

lien conferred by our statute. See *Connolly Development, Inc.* v. *Superior Court*, supra; *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, supra. For this reason, the creditor seeking to establish a lien has an interest in the property which deserves consideration in the resolution of the due process question. *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974); *Connolly, Development, Inc.* v. *Superior Court*, supra; *Cook* v. *Carlson*, supra; *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, supra; *Carlson A. Morse, Inc.* v. *Rentar Industrial Develompent Co.*, supra.

In evaluating the competing interests, it is appropriate to consider the degree of the impact of the application of the statute upon the owner. *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969). See also, *Cook* v. *Carlson*, supra; *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, supra; *Goldberg* v. *Kelly*, supra; *North Georgia Finishing, Inc.* v. *Di-Chem, Inc.*, 419 U.S. 601, 95 S. Ct. 719, 42 L. Ed. 2d 751 (1975). Over three-quarters of a century ago in an attack on the constitutionality of the Ohio mechanics' and materialmen's statute which was rejected by the United States Court of Appeals for the Sixth Circuit in *Jones* v. *Great Southern Fireproof Hotel Co.*, supra, the court touched upon that impact. That court said:

> *** [The owner] has voluntarily made a contract with the law before him. He has thereby subjected his property to liability for certain debts of the contractor. His own voluntary consent is an element in the transaction. He knows what the law is, and makes a contract under the law. It is idle to say that under such circumstances he is deprived of his property without due process of law. ***

The Supreme Court of Tennessee had previously taken the same position in upholding its mechanics' and materialmen's lien statute when it was attacked as permitting a taking of property without due process of law. *Cole Manufacturing Co.* v. *Falls*, 90 Tenn. 466, 16 S.W. 1045 (1891). Among other decisions sustaining mechanics' and materialmen's lien statute attacks on the ground that they violated due process requirements are: *Prince* v. *Neal-Millard Co.*, 124 Ga. 884, 53

S.E. 761 (1905); *Ruocco* v. *Brinker*, 380 F. Supp. 432 (3 judge D.C., Fla., 1974); *Cook* v. *Carlson,* supra; *Bankers Trust Co.* v. *El Paso Pre-Cast Co.,* supra; *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, 235 Ga. 727, 221 S.E. 2d 433 (1975); *Carl A. Morse, Inc.* v. *Rentar Industrial Development Corp.*, 56 A.D. 2d 30, 391 N.Y.S. 2d 425 (1977).

It cannot reasonably be said that the pre-*Sniadach* decisions upholding the constitutionality of these statutes against "due process" attacks are no longer valid because of a new concept of due process springing from the decisions in *Sniadach* and *Goldberg* v. *Kelly,* supra. Even the four-justice majority in *Fuentes* pointed out that these decisions were in the mainstream of earlier decisions on procedural due process requirements and were not a radical departure from established principles.

In considering our own due process requirements, we agree with the distinction made in *Spielman-Fond* upon the basis that the owner is not deprived of the *use* or *possession* of his property for even one day prior to the establishment of the validity of an asserted mechanics' or materialmen's lien. The significance of such a distinction was even recognized by the four-judge majority in *Fuentes* v. *Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556, reh. den., 409 U.S. 902, 93 S. Ct. 177, 34 L. Ed. 2d 165 (1972). See footnotes 15 and 22 to that opinion. See also, *Bankers Trust Co.* v. *El Paso Pre-Cast Co.*, 192 Colo. 468, 560 P. 2d 457 (1977); *Ruocco* v. *Brinker,* supra; *Cook* v. *Carlson,* supra; *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, supra; *Carl A. Morse, Inc.* v. *Rentar Industrial Development Corp.*, supra.

The generality of the statement in *Ewing* v. *Mytinger & Casselberry*, 339 U.S. 594, 70 S. Ct. 870, 94 L. Ed. 1088 (1950), that, where only property rights are concerned, an opportunity at some stage for a hearing and a judicial determination is sufficient to meet due process requirements, may have been limited by later decisions, but it is still applicable where not so limited. All that due process requires is an opportunity for a hearing, appropriate to the nature of the case, at a meaningful time and in a meaningful manner, and the procedural requisites vary, depending upon the importance

of the interest involved and the nature of the subsequent proceedings. *Boddie* v. *Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). A prior hearing is not necessarily required where there is no deprivation of a significant property interest. *Boddie* v. *Connecticut*, supra. Mere postponement of the judicial inquiry is not a denial of due process, where only property rights are involved, if the opportunity for ultimate judicial determination of liability is adequate. *Mitchell* v. *W. T. Grant Co.*, 416 U.S. 600, 94 S. Ct. 1895, 40 L. Ed. 2d 406 (1974).

Following the decision in *Mitchell* v. *W. T. Grant Co.*, supra, a three-judge federal district court held that the Florida Mechanics' Lien Law met due process requirements and pointed out that prior opportunity to be heard might be essential to due process where the deprivation of property rights was severe and the post-deprivation safeguards inadequate but that it had been held in *Mitchell* that, where property rights only are involved, mere postponement of the judicial inquiry is not a denial of due process, if the opportunity for ultimate judicial determination of liability is adequate. *Ruocco* v. *Brinker*, supra. See also, *Carl A. Morse, Inc.* v. *Rentar Industrial Development Corp.*, supra.

We have pointed out the reasons for giving special protection to laborers, mechanics and materialmen who have contributed substantially to the enhancement of the value of an owner's property. It is recognized, even in *Sniadach* v. *Family Finance Corp.*, 395 U.S. 337, 89 S. Ct. 1820, 23 L. Ed. 2d 349 (1969), upon which appellant relies heavily, that a situation requiring special protection to a creditor interest may permit summary procedures without violating federal due process requirements. See also, *Cook* v. *Carlson*, 364 F. Supp. 24 (S.D., S.D., 1973); *Tucker Door & Trim Corp.* v. *Fifteenth Street Co.*, supra; *Carl A. Morse, Inc.* v. *Rentar Industrial Development Corp.*, supra.

The owner is not without means of protecting himself against the impact of a mechanics' or materialman's lien. As pointed out in *Cole Manfuacturing Co.* v. *Falk*, 90 Tenn. 466, 16 S.W. 1045 (1891), the owner could withhold the whole or a sufficient amount of the agreed price from the original con-

tractor until after the expiration of 120 days after completion of the work, or he may see to it that subcontractors, laborers and materialmen are paid as the work progresses or he may indemnify himself by requiring a performance and payment bond.[1] See Ark. Stat. Ann. §§ 51-613, -633, -634, -635 (Repl. 1971). The Tennessee court answered the contention that it would be inconvenient for the owner to adopt any of these expedients, saying:

> *** The constitutionality of an act of the legislature cannot be successfully impeached upon the ground that it involves the citizen in mere inconvenience. Much more than inconvenience is involved for the subcontractor and materialman. Without the protection of such a law, they would be constantly exposed to the danger of an entire loss of labor and material. Hence, as a matter of pure wisdom and justice, there could be but little difficulty in choosing between the situation with such a law and that which would exist without it. A policy that would involve one class of citizens in mere inconvenience for the pecuniary safety of another class is far more wise and just than that which would suffer loss to the latter class rather than entail inconvenience on the former.

As to the contention that the section of the Tennessee statutory provision recognizing the right of the owner to require an indemnifying bond from the original contractor was unconstitutional, the Tennessee court said that this section was simply declarative of an existing legal right of an owner to protect himself against a double payment which results from the security given to mechanics and materialmen by the preceding sections.

A property owner may bring a suit to enjoin the filing of a lien. See *Withrow* v. *Wright*, 215 Ark. 654, 222 S.W. 2d 809. He may bring an action to cancel the lien as a cloud on his title. See *Judd* v. *Rieff*, 174 Ark. 362, 295 S.W. 370; *Speights* v. *Arkansas Savings & Loan Ass'n.*, 239 Ark. 587, 393 S.W. 2d 228; *Nowlin* v. *Noteware*, 177 Ark. 688, 7 S.W. 2d 791. He may seek a declaratory judgment against a lien claimant to es-

---

[1] It seems that in this case the furnishing of a bond by the contractor was mandatory. See Ark. Stat. Ann. § 51-633.

tablish that the claimant has no right to a lien. Ark. Stat. Ann. § 34-2501 et seq (repl. 1962); *Rabren* v. *Andalusia Lumber & Supply Co.*, 279 Ala. 551, 188 So. 2d 279 (1966).

We do not mean to imply that the procedures provided by our mechanics' and materialmen's lien statutes have always afforded the most desirable balancing of interests that could be achieved and we note that the General Assembly has appropriately addressed itself recently to a review of its previous actions, a reassessment of the balances heretofore applied and revision of those procedures in order to achieve a better accommodation of the important competing interests. See Ark. Stat. Ann. § 51-608.1 et seq (Supp. 1979). All we hold is that the statutes existing at the time of this action reached a constitutional accommodation of these respective interests. This is all that due process requires. *Mitchell* v. *W. T. Grant Co.*, supra.

The property interests affected are not of such a nature that minimum due process standards require more than our statutes afford in the way of notice and hearing.

The decree is affirmed.

HICKMAN and MAYS, JJ., dissent.