A.P. LEONARDS d/b/a Carabeef Ranch
*v.* E.A. MARTIN MACHINERY COMPANY

95-9                                    900 S.W.2d 546

Supreme Court of Arkansas
Opinion delivered July 3, 1995
[Rehearing denied September 11, 1995.]

*Burrow & Sawyer*, by: *Stephen P. Sawyer*, for appellant/cross-appellee.

*Davis & Goldie*, by: *Steven B. Davis*, for appellee/cross-appellant.

DONALD L. CORBIN, Justice. Appellant, A.P. Leonards d/b/a Carabeef Ranch (Leonards), appeals an order of the Benton County Chancery Court awarding a money judgment to appellee, E.A. Martin Machinery Company (Martin Machinery), for repairs Martin Machinery made to Leonards's bulldozer. Martin Machinery cross-appeals from that part of the order declaring the repairmen's lien statutes, Ark. Code Ann. §§ 18-45-201 to -207 (1987), unconstitutional as violative of both federal and state due process provisions set forth in U.S. Const. amend. 14 and Ark. Const. art. 2, § 8, respectively. Jurisdiction of this case is properly in this court as the constitutionality of a statute is questioned. Ark. Sup. Ct. R. 1-2(a)(3).

## BACKGROUND FACTS

Testimony at trial revealed the following facts. In November 1992, Leonards contacted Martin Machinery concerning possible repairs to Leonards's 1965 model Caterpillar D8H bulldozer. Joe Bill Morris, then a field service mechanic for Martin Machinery, went to Carabeef Ranch and began discussing the bulldozer's problems with both Leonards and the ranch foreman, Jim Williamson. Morris suggested the bulldozer be transported to Martin Machinery's shop so the repairs could be done there. The bulldozer was transported to the shop where Martin Machinery made repairs to it for which Leonards was billed in the sum of $19,284.53.

Leonards questioned the amount of the bill as he thought it exceeded the current value of the bulldozer. Testimony from three witnesses placed the value of the bulldozer between $14,000.00 and $20,000.00. Leonards and Martin Machinery unsuccessfully attempted to reach a compromise on the repair bill. Pursuant to sections 18-45-201 to -207, Martin Machinery sent Leonards a notice dated July 9, 1993 of its intent to sell the bulldozer at public sale on July 31, 1993.

On July 30, 1993, Leonards initiated this suit by filing a petition in chancery court to enjoin the sale. Martin Machinery refrained from the sale, but answered the complaint in equity and counterclaimed for the amount of its repair bill, attorneys' fees, costs, and interest. In its answer, Martin Machinery asserted it was maintaining possession of the bulldozer in accordance with the repairmen's lien authorized in section 18-45-201. Leonards amended his petition twice to include a request that the repairmen's lien statutes be declared unconstitutional, a request for damages for lost use and wrongful possession of the bulldozer, and a request for damages for Martin Machinery's negligence in failing to advise Leonards of the costs of the repairs and in making the repairs without authorization from Leonards. A Deputy Attorney General for the State of Arkansas notified the trial court of the Attorney General's receipt of Leonards's second amended complaint as required by Ark. Code Ann. § 16-111-106(b) (1987), and informed the trial court that the Attorney General would not participate in the defense of the constitutionality of the repairmen's lien statutes.

After trial, the chancellor entered an order finding the repairmen's lien statutes unconstitutional, but dismissing Leonards's claims for damages. In addition, the chancellor awarded Martin Machinery attorneys' fees, interest, and the amount of the repair bill less $750.00 for unjustified expenses. The order did not address the issue of possession of the bulldozer.

■  Leonards's appeal and Martin Machinery's cross-appeal followed the entry of the trial court's order. We consider the cross-appeal first, as resolution of that question determines the need to address certain issues raised on direct appeal. *See Nabholz Constr. Corp.* v. *Graham*, 319 Ark. 396, 892 S.W.2d 456 (1995).

## CROSS-APPEAL

Martin Machinery challenges the trial court's finding that the repairmen's lien statutes are unconstitutional as violative of the due process clauses in the United States and Arkansas Constitutions. The trial court ruled the repairmen's lien statutes violated both state and federal due process provisions because they did not provide the property owner with a right of replevin or conversion, or a hearing, or a right to post bond in order to obtain possession prior to the sale. In ruling the repairmen's lien laws unconstitutional, the trial court relied on *Flagg Brothers, Inc.* v. *Brooks*, 436 U.S. 149 (1978), and decisions of this court holding this state's statutes on attachments, garnishments, and execution of judgments unconstitutional for lack of due process. *See, e.g., Duhon* v. *Gravette*, 302 Ark. 358, 790 S.W.2d 155 (1990); *McCrory* v. *Johnson,* 296 Ark. 231, 755 S.W.2d 566 (1988); *see also Davis* v. *Paschall,* 640 F. Supp. 198 (E.D. Ark. 1986).

Martin Machinery makes several arguments on cross-appeal of which we consider only that concerning state action, as reversal is required on that point. Martin Machinery cites *Flagg Bros.,* 436 U.S. 149, and argues there was no state action in this case because there was no participation by any state officials. We agree with Martin Machinery and conclude the trial court's interpretation of *Flagg Bros.* and reliance on our case law on garnishment, attachment, and execution statutes was erroneous. Necessarily, we must consider separately the state action issue with respect to federal due process analysis and state due process analysis.

■    In the context of federal due process analysis, the issue of state action is well-settled in the area of state statutes on creditor's remedies and similar statutes. Citing with approval its decision in *Flagg Bros.*, 436 U.S. 149, a case involving New York's version of the Uniform Commercial Code provision for a warehouseman's lien, § 7-210, the United States Supreme Court has stated that "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action." *Tulsa Prof. Collection Servs.* v. *Pope*, 485 U.S. 478, 485 (1988). The Supreme Court went on to state that "when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found." *Id.* at 486. Thus, we observe a significant distinction between cases involving actions taken by or with the overt assistance of state officials and those that do not involve any action or assistance by state officials. The former class of cases may include, among others, procedures for attachment or execution of a judgment as those procedures necessarily require state action by a judge or sheriff or both. For example, in an attachment case, a creditor must first obtain a writ of attachment from a court and then have that writ executed by a sheriff. *See, e.g., Lugar* v. *Edmondson Oil Co.*, 457 U.S. 922 (1982). The latter class of cases may include cases such as the instant one where no action by a state official was taken inasmuch as Martin Machinery asserted its possessory lien pursuant to statute, but used no assistance from any state official in so doing. *See, e.g., Flagg Bros.*, 436 U.S. 149. The *Pope* Court's classification was more recently relied upon by the Supreme Court in *Connecticut* v. *Doehr*, 501 U.S. 1 (1991).

■    Therefore, we hold that, with respect to the application of federal due process analysis to this case, no state action has occurred, thus the deprivation of Leonards's property interest is not protected by the Fourteenth Amendment. While ownership is a significant interest in property, *Mitchell* v. *W.T. Grant Co.*, 416 U.S. 600, 604 (1974), it is a property interest that the Fourteenth Amendment protects only from deprivations by state action, not by private action. *Pope*, 485 U.S. at 485. The trial court misinterpreted *Flagg Bros.* and overlooked the distinction between private parties who utilize overt assistance from state officials and private parties who do not make use of state officials when relying on statutory remedies for settling a dispute.

The trial court therefore erred in holding our repairmen's lien laws unconstitutional as applied in this case for violating federal due process requirements. We would reach an entirely different result, of course, had Martin Machinery used the assistance of any state official to retain possession of the bulldozer or to effect its sale.

■ Turning now to consideration of the state action issue in the context of due process under the Arkansas Constitution, we begin with this court's determination of state action in *South Central Dist. of the Pentecostal Church of God of America, Inc. v. Bruce-Rogers Co.*, 269 Ark. 130, 599 S.W.2d 702 (1980). In *Bruce-Rogers*, this court held that the Arkansas mechanics' and materialmen's lien statutes, currently codified as Ark. Code Ann. §§ 18-44-101 to -133 (1987 & Supp. 1993), did not violate either federal or state due process provisions.[1] On the Arkansas constitutional question, this court observed, without discussion, that state action was involved in the lien procedures there at issue. *Bruce-Rogers*, 269 Ark. at 139, 599 S.W.2d at 705. However, the issue of state action was not raised in that case, and, thus, was an issue this court passed upon *sub silentio*. This court has never held itself bound by matters upon which it passed *sub silentio, Ellison* v. *Oliver*, 147 Ark. 252, 259, 227 S.W. 586, 588 (1921), nor has the United States Supreme Court, *Harper* v. *Virginia Dept. of Taxation*, ___ U.S. ___, 113 S. Ct. 2510 (1993). As such, we are not bound by the statement of state action in *Bruce-Rogers*, and consider the merits of that issue here since it is properly raised in this case.

■ When engaging in state due process analysis, this court has used a balancing test of competing interests somewhat similar to the federal test enunciated in *Mathews* v. *Eldridge*, 424 U.S. 319 (1976). *See, e.g., Bruce-Rogers*, 269 Ark. 130, 599 S.W.2d 702. Consistent therewith, for purposes of determining

---

[1]Here we note that the United States Supreme Court has explained its summary affirmance in *Spielman-Fond, Inc.* v. *Hanson's Inc.*, 379 F. Supp. 997 (D. Ariz. 1973), *aff'd* 417 U.S. 901 (1974), the case upon which this court based its ruling on the federal due process issue in *Bruce-Rogers*, in a manner contradictory to this court's perception expressed in *Bruce-Rogers. Cf. Doehr*, 501 U.S. 1, at 12, n.4, and *Bruce-Rogers*, 269 Ark. at 135-36, 599 S.W.2d at 703-04. However, the explanation of *Spielman-Fond* by the *Doehr* Court is entirely consistent with our ruling today on the federal constitutional question.

whether one has been deprived of property in violation of the Arkansas Constitution's due process provision, article 2, § 8, we adopt the analysis of state action as enunciated in the federal context by *Lugar*, 457 U.S. at 937. Two requirements, therefore, must be met before we will find state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* The second requirement of the foregoing test has not been met in this case. We therefore conclude no state action was taken in this case, and the trial court erred in holding the repairmen's lien laws at issue here were unconstitutional as violative of the due process clause of the Arkansas Constitution.

On cross-appeal, we reverse and dismiss the trial court's decision declaring the repairmen's lien laws unconstitutional on both state and federal due process grounds.

### DIRECT APPEAL

Leonards alleges four points of error on direct appeal. We find no error and affirm the judgment on direct appeal.

■ For his first point of error, Leonards contends the trial court erred in not awarding him damages for wrongful detention of the bulldozer after declaring the repairmen's lien statutes unconstitutional. This point is premised upon the trial court's erroneous finding that the lien statutes are unconstitutional. Our holding on cross-appeal that the lien statutes are indeed constitutional therefore renders moot any claim by Leonards for wrongful detention of the bulldozer. With few exceptions not applicable here, we do not address moot issues. *Wright* v. *Keffer*, 319 Ark. 201, 890 S.W.2d 271 (1995).

Second, Leonards challenges the amount of damages awarded to Martin Machinery on its counterclaim. Leonards contends the

trial court erred in finding the amount of the repair bill to be fair and reasonable and in awarding Martin Machinery the amount of the repair bill rather than the amount by which the repairs increased the market value of the bulldozer.

Relying on *Hawkins* v. *Delta Spindle of Blytheville, Inc.*, 245 Ark. 830, 434 S.W.2d 825 (1968), Leonards argues that Martin Machinery failed to prove its damages were fair and reasonable. There, this court stated that:

> [w]here labor or material is furnished by a party and no price is agreed upon, the law will imply an agreement to pay what it is worth. If a contract makes no statement as to the price to be paid for services, the law invokes the standard of reasonableness and the fair value of the services is recoverable.

*Id.* at 834, 434 S.W.2d at 827 (citations omitted). Since the chancellor held any lien Martin Machinery may have had unconstitutional, the chancellor's award to Martin Machinery was presumably made on the basis of its counsel's claim in closing argument to recover on the repair bill, or alternatively, in *quantum valebant*. Therefore, Leonards has cited us to the correct measure of damages to be applied in this case on a theory of implied contract. *Hawkins*, 245 Ark. 830, 434 S.W.2d 825. Despite Leonards's assertion to the contrary, *Hawkins* does not stand for the proposition that damages from an implied contract for repairs are measured by the increase in value of the repaired property.

The burden was therefore on Martin Machinery to prove that the invoiced amount for which it sought recovery, $19,284.53, was the fair and reasonable value of the parts and labor furnished. *Hawkins*, 245 Ark. 830, 434 S.W.2d 825. Martin Machinery's invoice, which totaled $19,284.53 and was itemized by amount according to labor and parts for the specific repair jobs made to the bulldozer, was admitted into evidence. During its case, Martin Machinery introduced testimony by its branch manager that there was nothing unusual about the invoice and that, according to his memory, its hourly rate for labor was $38.00 at the time in question. The mechanic testified as to the repairs made to the bulldozer. He stated he went to Carabeef Ranch to diagnose the problems, had the bulldozer hauled to Martin Machinery's shop, and saw to it that all of the repairs listed in his service report

were actually made. The mechanic's service report was admitted into evidence and essentially lists the same repairs as the invoice. During Leonards's case, the branch manager testified that it was not uncommon for customers to spend more on a tractor than it was actually worth and that Martin Machinery had previously billed a customer for over $30,000.00 in repairs to a 1974 model Caterpillar D8H bulldozer. According to three witnesses, the value of the bulldozer in question was placed at $5,000.00 before the repairs and from $16,000.00 to $20,000.00 after the repairs.

■ The trial court's order specifically found the repair bill was reasonable and did not exceed the industry standard. The trial court awarded the amount of the bill, less $500.00 for credit on the sale of the existing radiator and less $250.00 for the mark-up on transportation costs. Based on the foregoing evidence, we conclude Martin Machinery satisfied its burden of proving the reasonableness of the value of its parts and labor and therefore cannot say the trial court's findings were clearly erroneous.

■ Third, Leonards argues the trial court erred in not finding Martin Machinery negligent in failing to discuss costs or give an estimate. The trial court ruled Martin Machinery was not negligent in the way it handled this job, finding that Martin Machinery discussed the repairs with Leonards in person at Leonards's ranch and twice by telephone, that Leonards had authorized the repairs, and that Leonards was experienced in business transactions and had done business with Martin Machinery previously. There is substantial evidence in the record to support these findings. Indeed, we need look no further than the testimony of Leonards himself to support the trial court's findings. We cannot say the trial court was clearly erroneous in this regard.

■ Fourth, Leonards challenges the jurisdiction of the chancery court. Prior to appearing at trial in chancery court, Leonards filed a motion to transfer to circuit court. On appeal, Leonards argues he had an adequate remedy at law, although he never formally abandoned his request for an injunction based on irreparable harm. Leonards never obtained a ruling on his motion to transfer and appeared at trial in chancery court without ever raising the jurisdictional objection again. Even assuming arguendo that Leonards's complaint failed to state a ground for equitable relief, Martin Machinery supplied any defect by pursuing its lien

in equity court pursuant to section 18-45-207(a). *Nottingham* v. *Knight*, 238 Ark. 307, 379 S.W.2d 260 (1964); *Spikes* v. *Hibbard*, 225 Ark. 939, 286 S.W.2d 477 (1956). It is a well-settled rule that one who has invoked the assistance of equity cannot later object to equity's jurisdiction unless the subject matter of the suit is wholly beyond equitable cognizance. *Id.* The equity court's jurisdiction may derive from the counterclaim. *Smith* v. *Whitmire*, 273 Ark. 120, 617 S.W.2d 845 (1981); *Thomason* v. *Abbott*, 217 Ark. 281, 229 S.W.2d 660 (1950). Unless the chancery court has no tenable nexus to the claims in question, this court considers the matter to be one of propriety rather than jurisdiction, such that this court will not consider the matter if it was waived below. *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986).

The judgment is affirmed on direct appeal and reversed and dismissed on cross-appeal.

Roaf, J., dissents.