Jim HAMILTON *v.* PULASKI COUNTY
SPECIAL SCHOOL DISTRICT

94-1189                                                    900 S.W.2d 205

Supreme Court of Arkansas
Opinion delivered July 3, 1995

*Mitchell, Blackstock & Barnes*, by: *Clayton R. Blackstock*, for appellant.

*Skokos & Coleman, P.A.*, by: *Joy Bequette*, for appellee.

ROBERT L. BROWN, Justice. This case involves the Teacher Fair Dismissal Act and the decision by the appellee Pulaski County Special School District not to renew the coaching contract of appellant Jim Hamilton at Jacksonville High School for the 1993/94 school year. Hamilton raises three issues on appeal: (1) the Superintendent's notice of recommended nonrenewal was not "simple but complete" as required by the Act; (2) a defective notice cannot be cured by the School District Board after its decision; and (3) the School District Board was arbitrary and capricious because it considered charges in its decision not stated in the notice. We agree with Hamilton that the Superintendent's notice of nonrenewal was deficient, and we reverse and remand the matter with directions that Hamilton be reinstated with appropriate back pay.

On April 26, 1993, Bobby Lester, Superintendent of appellee, wrote Hamilton that he was recommending to the School Board that Hamilton's basketball coaching contract at Jacksonville High School not be renewed. That letter read in part:

> Pursuant to Ark. Code Ann. § 6-17-1506, you are notified that I am recommending the non-renewal of your supplemental contract for coaching at Jacksonville High School for the 1993-94 school year. The reason for this recommendation is inefficiency and failure to follow reasonable written regulations and policies.

On May 12, 1993, Hamilton requested a hearing on the nonrenewal recommendation before the School Board. In that letter he requested "the names and addresses of all persons who may testify against me and the nature of their expected testimony." He reiterated this request on May 25, 1993.

On May 26 and June 10, 1993, a lengthy hearing was held on this matter before the School Board. At the beginning of the hearing, the twin reasons for nonrenewal of the coaching contract were read: "inefficiency, failure to follow reasonable written regulations and policies." Hamilton's representative asked for a continuance and pointed out that he had not received the witness information and that the reasons for nonrenewal were too broad and did not satisfy the statutory mandate that they be "simple but complete." Counsel for the School District responded that Hamilton had access to his personnel file which included all the complaints against him which would be presented to the School Board. The School Board denied the request for a continuance.

Several witnesses testified at the hearing about problems surrounding Hamilton's coaching. The principal of Jacksonville High School, Jim Johnson, stated that he had completed several evaluations of Hamilton. He explained that his 1992 evaluation rated Hamilton's performance on "follow-through" and "managerial ability" as unsatisfactory. A few of the incidents cited as examples of this were Hamilton's lapses in inventory control, his failure to complete eligibility forms for players in a timely manner, his giving athletic letters to ineligible students, his unequal schedules for male and female teams, and his tardy arrangement of fundraising for a basketball tournament. In February 1992, Johnson and Hamilton met and settled on an action plan to improve his managerial skills. Johnson testified, however, that matters did not improve. As examples, he cited Hamilton's failure to pay for a pair of basketball shorts, his failure to hire a referee to officiate at a game, his failure to fill out schedule change forms for a particular player, and his failure to obtain participation fees from practicing players.

On January 26, 1993, Johnson testified that he evaluated Hamilton's "judgment" and "ability to motivate and develop" as unsatisfactory. He discussed at the hearing multiple complaints

from players and parents of players which included Hamilton's "nasty" attitude toward one parent; lack of playing time for the team members; description of players as "stupid," "crybabies," and "knuckleheads"; using profanity at games such as "Foul! Damn it, Foul!"; and failure to arrange newspaper coverage for one particular ballgame. Johnson further related that Hamilton had violated Arkansas Activities Association rules by allowing two players to practice and play before obtaining a physical examination and that parents had complained when a newspaper reported that Hamilton had suspended their son from the team before Hamilton told them or their son of the suspension.

Other witnesses corroborated Johnson's testimony, including parents and athletic staff. Johnny Watson, athletic coordinator at Jacksonville High School, and Jerry Wilson, assistant basketball coach, described incidents which they said evidenced a breakdown in team discipline and a lack of sportsmanship on the part of the team. It was revealed that by the end of the 1992/93 basketball season, eight team members had quit.

Hamilton testified on his own behalf. He admitted that he was familiar with his personnel file but stated that he had no prior knowledge of Johnny Watson's and Jerry Wilson's concerns about the basketball program. He also stated that the principal, Jim Johnson, did not support him in parental conferences.

After proof was presented, several School Board members questioned Hamilton about his deteriorating relationship with the school's principal and the other coaches. The School Board then voted not to renew Hamilton's coaching contract for the 1993/94 school year.

On July 13, 1993, the School Board met and held a closed session regarding the nonrenewal of Hamilton's coaching contract. The School Board adopted six reasons supporting the charges that Hamilton was inefficient and did not follow written regulations and policies:

> (1) failure to maintain and secure inventory; (2) failure to comply with Arkansas Activities Association Regulations concerning the participation by team members without the requisite physical examination by a doctor; (3) failure to notify a team member or his parents of the team

member's suspension from the team prior to publication of the suspension to the media; (4) failure to establish and enforce reasonable team rules resulting in the lack of team discipline and loss of team morale; (5) failure to comply with rules requiring payment of a participation fee by team members; and (6) inappropriate conduct toward team members and their parents.

Hamilton next filed an appeal to Pulaski County Circuit Court. The circuit court found that the notice was sufficient and that the Teacher Fair Dismissal Act had been followed.

■ We first consider whether the Superintendent's reasons for recommending nonrenewal — inefficiency and failure to follow reasonable written regulations and policies — satisfied the Teacher Fair Dismissal Act, codified at Ark. Code Ann. § 6-17-1501 *et seq.* (Supp. 1991). We recognize that it is not our function to substitute our judgment on renewal matters for either that of the circuit court or that of the School Board. *Allen* v. *Texarkana Public Schools*, 303 Ark. 59, 794 S.W.2d 138 (1990); *Green Forest Public Schools* v. *Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985). When the issue before us is whether procedures under the Teacher Fair Dismissal Act have been strictly complied with, however, that is clearly a matter for this court's review.

The pertinent statute states in part:

The notice of recommended nonrenewal of a teacher shall include a simple but complete statement of the reasons for such recommendation.

Ark. Code Ann. § 6-17-1506(b) (Supp. 1991). Hamilton contends that the notice was anything but complete and that he was deprived of the ability to fashion his defense. The School District counters that the notice was complete when read in conjunction with Hamilton's personnel file. Moreover, the School District points out that the two reasons given in the notice are two of the seven reasons for which a teacher contract could be cancelled under the Professional Negotiations Agreement. By its terms, that agreement is binding on individual teacher contracts.

■ Under the Teacher Fair Dismissal Act, a nonrenewal of a contract is void unless procedures are strictly followed. Ark.

Code Ann. § 6-17-1503 (Supp. 1991); *Western Grove School Dist.* v. *Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994). We have previously underscored the importance of a nonrenewal notice before School Board action. *Western Grove School Dist.* v. *Terry, supra.* In *Allen* v. *Texarkana Public Schools, supra,* we stressed the fundamental necessity of a notice that is *complete.* In that case, the teacher's contract was not renewed due to a "pattern of conduct" that covered several years. The Superintendent's recommmendation did not refer to this general reason, however, but rather to five individual charges. We held that nonrenewal could not be based on an unspecified charge and added:

> To allow the superintendent and the board to delve into ad libbed charges renders meaningless the requirements of sections 16-17-1507(b)[1] and 16-17-1507(c), and our language in *Murray* [*Murray* v. *Altheimer-Sherrill Public Schools*, 294 Ark. 403, 743 S.W.2d 789 (1988)] that teachers are entitled to rely on a simple and complete statement of reasons as to nonrenewal of their contracts.

*Allen*, 303 Ark. at 63, 794 S.W.2d at 140.

We agree with Hamilton that the notice of nonrenewal in the case before us was patently incomplete. Mere recitation of the generic categories of inefficiency and noncompliance with written regulations and policies tells a teacher nothing about the reasons for nonrenewal. Without that information, preparation for a hearing is well nigh impossible. Here, the problem is comparable to the situation in *Allen* v. *Texarkana Public Schools, supra.* The ultimate reason for nonrenewal in *Allen* was not provided the teacher in advance of the hearing. In the case at hand, the reasons given by the Superintendent were far too broad and general and lacked specificity. The net effect was that the precise reasons for nonrenewal were not afforded Hamilton in advance of the hearing.

The School District adduces *O'Connell* v. *School Dist. of Springfield*, 830 S.W.2d 410 (Mo. 1992) (en banc), for the proposition that though a warning letter might be insufficiently specific in itself, it met statutory requirements when the teacher was

---

[1]This citation appears erroneous and should be section 16-17-1506(b).

aware of the full extent of the problems due to conferences and evaluations. The *O'Connell* case is not precedent for the present case because it did not concern a notice of nonrenewal. Moreover, we do not agree that Hamilton's personnel file formed an adjunct to the notice or that the categories under the Professional Negotiations Agreement for tenured teacher cancellation satisfy the statutory requirement for completeness. Under the Teacher Fair Dismissal Act, more must be included in the notice itself to pinpoint the allegations so that the aggrieved teacher can prepare to mount a defense, free of guesswork and speculation.

■ It is also beyond dispute that reasons for nonrenewal must be provided before the School Board hearing — not at a later time. *Western Grove School Dist.* v. *Terry, supra; Green Forest Public Schools* v. *Herrington, supra.* To adopt grounds for nonrenewal after the requested board hearing is totally meaningless. The School District urges that the six reasons for nonrenewal given after the decision and at the July 1993 School Board meeting were the Board's conclusions, as required by Ark. Code Ann. § 6-17-1510(c) (Supp. 1991). Whatever the case, the particulars for nonrenewal endorsed after the hearing have no curative effect on the lack of completeness of the Superintendent's original notice.

■■ Finally, the School District argues as an alternative reason to affirm that the Teacher Fair Dismissal Act does not apply to extracurricular activities like coaching, but only to teachers and teaching. Not only was this argument not made at the School Board hearing or to the circuit court on appeal, it was never developed either factually or by arguments of counsel in the previous forums. Because we do not have the factual or legal basis for an appropriate consideration of the issue, we decline to entertain it on appeal. We do note in this regard that we have previously applied the Teacher Fair Dismissal Act to teacher/coaches. *Western Grove School Dist.* v. *Terry, supra; Lamar School Dist. No. 39* v. *Kinder,* 278 Ark. 1, 642 S.W.2d 885 (1982).

We reverse the circuit court's order and remand with instructions that an order be entered reinstating Hamilton to his coaching position with appropriate back pay.

Reversed and remanded.