Kittye MASON *v.* Jody JACKSON

94-1352                                                914 S.W.2d 728

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*Edward O. Moody*, for appellant.

*Gill Law Firm, P.L.C.*, by: *John P. Gill*, for appellee.

DAVID NEWBERN, Justice. Jody Jackson, the appellee, teaches horseback riding. Kittye Mason, the appellant, is the mother of Lydia Mason who, as a teenager, was a student of Ms. Jackson. Kittye Mason agreed to pay Ms. Jackson $500 to find a 10-year-old gelding, trained as a hunter-jumper, to be purchased for some $10,000 for Lydia Mason. Kittye Mason brought tort and contract claims against Ms. Jackson resulting from dissatisfaction with the horse Ms. Jackson helped her purchase. The Trial Court held in favor of Ms. Jackson and awarded attorney's fees to her. We affirm the judgment and the

fee award.

After entering the agreement, Ms. Jackson heard of an 11-year-old horse named "Norway" she thought might be suitable. Norway was owned by Phil Devita, owner of Coral Hill Farm in Florida. Norway was for sale for $11,500. Ms. Jackson spoke to Carolyn Tanner, who was apparently an employee of Mr. Devita with whom Ms. Jackson was acquainted, who told her Norway was 11 years old. She then spoke of Norway to Kittye Mason who expressed interest. The two of them flew to Florida, along with Lydia Mason, to have a look at Norway and other horses in March 1990.

While in Florida, the threesome observed Norway's abilities and temperament at a horse show, and Lydia Mason rode him. They discussed Norway with the Savills, who were his former owners. Ms. Savill testified that, when she purchased Norway in December 1988, he was eight or nine years old and she had him examined by a veterinarian in connection with her purchase of him. Although they looked at other horses while in Florida, Mrs. Mason and Lydia decided to purchase Norway.

Kittye Mason testified it was Ms. Jackson's responsibility to have Norway examined by an independent veterinarian before the purchase was to be completed. Ms. Jackson testified that Kittye Mason asked Ms. Tanner to arrange for the veterinary examination to expedite the matter, as she did not want to spend more than four days on the trip. The veterinarian who examined Norway was Dr. Delius, the "barn vet" at Coral Hill Farm. He certified the horse to be 11 years old. Ms. Jackson testified she told Kittye Mason that it was Dr. Delius who performed the examination.

Norway was ill when he arrived by van at Ms. Jackson's farm where he was to be stabled. He suffered from colic from time to time over the following year. Several witnesses testified that Lydia Mason treated Norway badly, and his condition could have been the result of stress from mistreatment. Despite that, he won a number of contests for Lydia Mason.

In October 1991, Dr. Joseph Hanley examined Norway at Ms. Mason's request and determined Norway's age to be over twenty. Kittye Mason sued Dr. Delius, Mr. Devita, and Ms.

Jackson for breach of contract, fraud, negligence, and strict liability. The claims against Dr. Delius and Mr. Devita were dismissed for lack of personal jurisdiction. The claims against Ms. Jackson were tried without a jury. In his letter opinion, Judge Bogard wrote:

> The court finds that the Plaintiff did not prove by a preponderance of the evidence any negligence on the part of the Defendant as to the selection of the horse or the veterinarian. The Defendant did all a reasonable person would do in procuring a suitable horse for the Plaintiff's daughter. Even assuming that the Plaintiff was responsible for arranging for the veterinarian examination, no one testified that only an independent veterinarian should perform this type of examination. In fact, one horse trainer testified that she would rather have the horse's regular veterinarian perform the examination. Several trainers that testified stated that they rely on the out of state trainer/seller to secure a veterinarian, whether independent or the usual veterinarian, for a sale examination. All witnesses testified that only a veterinarian could properly and safely age a horse.
>
> In addition, there is absolutely no evidence before this Court that Defendant was a party to any misrepresentation, fraud, or deceit. The only issue for consideration is whether the Defendant breached an oral agreement with the Plaintiff when it was discovered that although Norway horse met all of the other requirements, he was not 11 years old. The Court notes that the Defendant admits that for a fee of $500, she did agree to find a horse meeting the above mentioned criteria. To put it simply, the Defendant was to put the Plaintiff in touch with such a horse, which she did. The agreement did not include a guarantee of the horse's age by the Defendant. Both parties knew that they would have to secure a veterinarian to certify the horse's age; both parties knew that ageing a horse was out of their realm of abilities. When the Plaintiff agreed to take the veterinarian's word, the Defendant ceased to be part of the contract, or in other words, Defendant's contract with the Plaintiff was completed. The court finds the Defendant did not breach her contract

with the Plaintiff. It is not reasonable to construe that the intent of the parties' agreement was that the Defendant would guarantee that Norway was 11 years old.

### 1. Code remedies

Several of Kittye Mason's points of appeal have to do with the Trial Court's failure to rule in her favor with respect to remedies prescribed in Article 2 of the Uniform Commercial Code for a buyer against a seller of goods. Ark. Code Ann. §§ 4-2-314 through 4-2-316 (Repl. 1991). We need not deal with those points in detail because the positions of Kittye Mason and Ms. Jackson were not those of buyer and seller. The agreement was for personal services and not for a sale.

The product liability remedies found in Ark. Code Ann. §§ 16-116-101 through 16-116-107 (1987) are for buyers against manufacturers and suppliers and for suppliers against manufacturers of defective products. Again, these parties do not fit those categories.

### 2. Negligence

Kittye Mason contended Ms. Jackson was negligent when she failed to find a horse that met her criteria. She appears to argue the Trial Court erred in failing to hold that Ms. Jackson breached her duty of care by failing to arrange for an independent veterinarian to certify Norway's age and health prior to their trip to Florida and subsequently in connection with the purchase. In response, Ms. Jackson cites the testimony of several other horse trainers who stated that an examination by an independent veterinarian was not required, and that it was often desirable to use a veterinarian familiar with the horse. In addition, we note the Trial Court could have based his decision in substantial measure upon Ms. Jackson's testimony that it was Kittye Mason who arranged the sale examination by Dr. Delius through Ms. Tanner.

To establish a prima facie case of negligence, the plaintiff must show that she sustained damages, that the defendant was negligent, and that such negligence was a proximate cause of the damages.

Negligence is the failure to do something which a

reasonably careful person would do. A negligent act arises from a situation where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner. *White River Rural Water Dist.* v. *Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992).

*Sanford* v. *Ziegler*, 312 Ark. 524, 851 S.W.2d 418 (1993).

None of the other horse trainers who testified stated that it was customary to verify a horse's age prior to showing him to a potential buyer. Rather, it appears that this determination can be made any time prior to purchase. None of those witnesses said an independent veterinarian must examine the horse. Nancy Sobba, a horse trainer from Jacksonville, testified that on out-of-state purchases, she has relied on an examination by a "barn vet," or a doctor familiar with the horse.

■ We cannot say that any of the Trial Court's factual conclusions were clearly erroneous, Ark. R. Civ. P. 52(a), or that his overall conclusion that Kittye Mason failed to present a pre-ponderance of the evidence on the issue of negligence was wrong.

### 3. Attorney's fee

Kittye Mason presents no argument with respect to breach of contract other than points which fall within Article 2 of the Uniform Commercial Code discussed above. Breach of contract was, however, a substantial issue before the Trial Court upon which Ms. Jackson prevailed.

Kittye Mason contends Ms. Jackson's attorney had said to her attorney that he did not intend to charge his client a fee because she was a relative. Her contention now is that the fee arrangement must have been based on the contingency of Ms. Jackson prevailing in the lawsuit and that the fee arrangement thus was required to be in writing according to Model Rules of Professional Conduct 1.5.

In his order, the Trial Court stated: "It is within the Court's discretion to award attorney's fees to the prevailing party in a contract case. . . . [Ark. Code Ann. § 16-22-308 (1987).] As noted in the judgment . . . the Court focused on the breach of contract issue. . . . Defendant has incurred and should be

awarded attorney's fees in the amount of $6,000."

■ Kittye Mason seems to be suggesting that Ms. Jackson did not incur an attorney's fee and thus none should be awarded. The Trial Court held specifically that Ms. Jackson did incur an attorney's fee. In these circumstances, the order of an attorney's fee after entry of the judgment is a collateral matter. *Marsh & McLennan of Arkansas* v. *Herget,* 321 Ark. 180, 900 S.W.2d 195 (1995). We cannot properly review this point because, as Ms. Jackson points out, Kittye Mason has not filed a notice of appeal from the fee order and has not provided us with a record of a hearing held on the attorney's fee issue.

Affirmed.

GLAZE and BROWN, JJ., not participating.