## NETTLETON SCHOOL DISTRICT *v.* Pam OWENS

96-1083 948 S.W.2d 94

Supreme Court of Arkansas
Opinion delivered July 14, 1997

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Lucinda McDaniel* and *Jeffrey W. Puryear*, for appellant.

*Henry, Walden, Halsey & Mixon*, by: *Barbara Halsey*, for appellee.

W.H."DUB" ARNOLD, Chief Justice. This case involves the interpretation of the Teacher Fair Dismissal Act, codified at Ark. Code Ann. § § 6-17-1501 to -1510 (Repl. 1993). The trial court found that appellant Nettleton School District failed to strictly comply with the Act when it terminated appellee and cross-appellant Pam Owens's contract for the 1993-94 school year. Both parties appeal the trial court's order. We affirm the trial court's ruling that the termination of Ms. Owens's contract was void.

Ms. Owens entered into a contract with the district to serve as a counselor at University Heights Elementary School for the 1993-1994 academic year. At approximately 8:00 p.m. on January 11, 1994, Ms. Owens, accompanied by her three children, went to her classroom. According to Ms. Owens, prior to going to the school, she had consumed one glass of wine and had taken one tablet of prescription medication for anxiety and stress. She became drowsy while in the classroom and put her head down on her desk. When the children could not awaken her, they called their father, whom Ms. Owens had served with a divorce complaint the previous day. Mr. Owens contacted principal Kay Darby, who in turn contacted administrator Michael Johnson. The three proceeded to Ms. Owens's classroom. According to Ms. Owens, she became upset and began crying when her husband entered her classroom.

According to principal Darby, she found Ms. Owens asleep on the floor of the classroom on the night in question. It was Ms. Darby's opinion that Ms. Owens was intoxicated, as she could smell alcohol on her breath. Mr. Johnson also observed that Ms. Owens had been drinking. Ms. Darby and Mr. Johnson helped Ms. Owens to her car, and Mr. Owens drove the children home.

When Ms. Owens reported to work the following morning, principal Darby asked her to take some time off work. Thereafter, Ms. Owens checked herself into Green Leaf Hospital for treatment for chemical dependency and anxiety. On January 21, superintendent John Sawyer hand delivered a letter to Ms. Owens notifying her that she was suspended. In the letter, Mr. Sawyer stated that, because she had been under the influence of alcohol in her classroom on January 11, he would recommend to the school

board that she be terminated due to her violation of the district's Drug Free Work Policy.

The school board conducted a hearing on February 24, 1994, at which superintendent Sawyer distributed to each board member three documents, which, according to him, led to Ms. Owens's suspension: 1) a memo from principal Darby to Mr. Sawyer dated January 19, 1994, which included not only a summary of the January 11 incident, but reports that Ms. Owens had been suspected of drinking at school activities on May 14, 1993, and September 21, 1993; 2) a letter written by Mr. Johnson dated January 12, 1994, in which he related that Ms. Owens had previously appeared on campus in an intoxicated condition; and 3) Mr. Sawyer's January 21, 1994, notification letter to Ms. Owens. Ms. Owens and her treating physician at Green Leaf, Dr. David Silas, testified at the hearing. According to Dr. Silas, while Ms. Owens had developed a dependency on alcohol, she was not a chronic alcoholic. Ms. Darby and Mr. Johnson also testified at the hearing. The board inquired about the January 11, 1994, incident, as well as the 1993 incidents. At the conclusion of the hearing, the board went into executive session for approximately two hours, after which superintendent Sawyer recommended in an open session that Ms. Owens be terminated. The board voted unanimously to accept Sawyer's recommendation. No other vote was taken.

On March 3, 1994, Ms. Owens received a letter from board president Lennie Hogan. According to Mr. Hogan, the board unanimously concluded that the following were the true reasons for her termination: 1) she violated the district's Drug Free Work Place Policy; 2) she violated the district's personnel policy; 3) she failed to meet the expectations of an elementary counselor; and 4) her termination was in the best interests of the students.

Ms. Owens filed suit in Craighead County Circuit Court, alleging that the board's action was arbitrary and capricious. The trial court conducted a hearing, at which Ms. Owens testified on her own behalf. Following her testimony, the district moved for directed verdict. The trial court denied the motion, after which the district presented the testimony of Ms. Darby, Mr. Johnson,

Mr. Hogan, and board member Richard Carvell. At the conclusion of the hearing, the trial court ruled that Ms. Owens's termination was void due to the district's failure to conduct a separate vote on whether the reasons in support of superintendent Sawyer's recommendation for termination were true. On March 12, 1996, the trial court entered an order awarding Ms. Owens the balance of her contract for the 1993-94 school year, but denying her request for attorney's fees for representation at the board hearing and before the Arkansas Employment Security Division. On April 4, 1996, the trial court entered an order denying Ms. Owens's claim for attorney's fees for representation in the circuit court action.

On direct appeal, the district claims that the trial court erred in failing to grant its motion for directed verdict at the close of Ms. Owens's case. Because the district waived any reliance on its motion when it chose to go forward and put on its own case, its contention is meritless. *See Willson Safety Prods. v. Eschenbrenner,* 302 Ark. 228, 788 S.W.2d 729 (1990).

The district further challenges the trial court's ruling that it failed to strictly comply with the Act when it terminated Ms. Owens's contract without conducting a separate vote on the truth of each reason given in support of the recommended termination. The provision in question, § 6-17-1510(c), provides as follows:

> Subsequent to any hearing granted a teacher by this subchapter, the board, by majority vote, shall make specific written conclusions with regard to the truth of each reason given the teacher in support of the recommended termination or nonrenewal.

The trial court ruled that the termination of Ms. Owens's contract was void because the district, while voting unanimously to accept superintendent Sawyer's recommendation of termination, failed to conduct a separate vote on the reasons or the truth of the reasons in support of the termination. The district argues that § 6-17-1510(c) does not require a separate vote. Describing the termination of Ms. Owens as "unique," the district contends that the board's vote on the recommended termination and the vote on the reasons given in support of the recommendation were simulta-

neous and thus were in compliance with the Act. In support of its argument, the district refers to board president Hogan's March 3, 1995, letter to Ms. Owens, in which he related the board's unanimous conclusion that there were four true reasons for her termination: 1) violation of the district's Drug Free Work Place Policy; 2) violation of the district's personnel policy; 3) failure to meet the expectations of an elementary counselor; and 4) that Ms. Owens's termination was in the best interests of the students. While the plain language of the statute does not speak in terms of a "separate" vote, § 6-17-1510(c) plainly requires a majority vote on the truth of each reason given the teacher in support of the recommended termination. The board must make specific written conclusions with regard to each of these reasons. Board member Richard Carvell testified that the only vote taken by the board was to accept Mr. Sawyer's recommendation:

> MR. HOGAN: We are in open session to the press. Mr. Sawyer, do you have a recommendation?
>
> MR. SAWYER: Mr. President, my recommendation is that Pam Owens be terminated from Nettleton Schools as of February 25, 1994, and that would begin tomorrow.
>
> MOTION: Ed Wilson, to accept the recommendation of the Superintendent.
>
> SECOND: Richard Carvell
>
> ACTION: 5-0
>
> MOTION: Ed Wilson, to adjourn at 9:00 p.m.
>
> SECOND: Richard Carvell
>
> ACTION: 5-0

Regarding Mr. Hogan's March 5 letter, he admitted at the hearing before the trial court that he did not write it, but merely signed it after it was presented to him by superintendent Sawyer. According to Mr. Carvell, the board did not vote to authorize Mr. Hogan to write the letter to Ms. Owens. Moreover, the parties stipulated that the board's vote to accept superintendent Sawyer's recommendation to terminate Ms. Sawyer's contract was the only vote taken at the hearing and that there was no separate vote on the four issues supporting the termination.

■■ The trial court found that Ms. Owens's termination was void because the board failed to conduct a *separate* vote on the reasons or the truth of the reasons in support of the termination. We conclude that the district did not strictly comply with § 6-17-1510(c) when the board failed to obtain a *majority* vote with regard to the truth of each reason given Ms. Owens in support of the recommended termination. We will affirm the ruling of a trial court if it reached the right result, even though it may be for a different reason. *Summers Chevrolet, Inc. v. Yell County*, 310 Ark. 1, 832 S.W.2d 486 (1992). In this case, the trial court reached the correct result, even though we affirm that result for a reason other than the one stated.

■ The district's failure to obtain a majority vote with regard to the truth of reasons in support of the recommended termination becomes even more troublesome when considered together with Ms. Owens's point on cross-appeal that the district failed to give her notice that incidents in May 14, 1993, and September 21, 1993, would be considered at the hearing. At the conclusion of the hearing, the trial court addressed this issue as follows:

> [T]he incidents in May and September of 1993, they weren't part of the reasons the superintendent gave in his letter, but there was testimony related to those reasons. In fact, the board members asked questions in the transcript about those two instances, and if those incidents were a part of the reason for termination, then I couldn't uphold the termination because they weren't — The teacher wasn't given notice in the superintendent's letter that those were part of the grounds for termination. I don't know that those were part of the reasons.

The provision at issue, § 6-17-1507(c), provides that "[t]he notice (of termination recommendation) shall include a simple but complete statement of the grounds for the recommendation of termination . . ." Without information that the 1993 incidents would be considered, Ms. Owens's "preparation for a hearing was well nigh impossible." *Hamilton v. Pulaski County Special Sch. Dist.*, 321 Ark. 261, 900 S.W.2d 205 (1995). While Messrs. Carvell and Hogan testified that everyone on the board understood

that he or she was voting only on the four grounds cited in the superintendent's letter, their testimony contradicts the superintendent's opening address at the hearing:

> At this time Mr. President I would like to hand out to you three documents. One is a document . . . written by Kay Darby, the other is (by) Mike Johnson and the third is part of, it is the letter that was hand delivered by Kay Darby and myself to Pam Owens on approximately the twenty-first of January.

> Mr. President I know you've had the opportunity to, you and the board, to review the three documents that are in front of you. *Those documents led to the suspension that was issued* and in that suspension there was a recommendation for termination . . .

(Emphasis added.) As the trial court observed, there was testimony regarding both the May and September 1993 incidents at the hearing. The board members asked questions about both incidents. If, contrary to the superintendent's opening remarks, the 1993 incidents indeed were to have no bearing whatsoever on the board's decision to terminate, we question the purpose behind their presentation to the board. Because the notice of termination recommendation did not include the 1993 incidents, we must conclude that the district failed to comply with § 6-17-1507(c). When considering the violation of this provision together with the district's violation of § 6-17-1510(c), we hold that the district's decision to terminate Ms. Owens's contract was void.

 Ms. Owens further contends that the district failed to engage in remedial or rehabilitative measures as mandated by § 6-17-1504(c). She also complains that the district did not strictly comply with § 6-17-1507(c), which requires that the superintendent send his notice of termination recommendation by registered or certified mail. Our holding that the termination of Ms. Owens's contract was void due to the district's failure to strictly comply with §§ 6-17-1510(c) and 6-17-1507(c) renders moot any claims by Ms. Owens that the district failed to strictly comply with other provisions of the Act, as a district's termination of a teacher is void unless the district strictly complies with *all* provisions of the Act. *See* § 6-17-1503 (emphasis added). With limited

exceptions not applicable here, this court does not address moot issues. *Leonards v. E.A. Martin Machinery Co.*, 321 Ark. 239, 900 S.W.2d 546 (1995).

■ On cross-appeal, Ms. Owens claims that the trial court erred in refusing to award her attorney's fees. The trial court entered his judgment on Ms. Owens's appeal of her termination on March 12, 1996. In this order, the trial court denied Ms. Owens's request for attorney's fees for representation at the board hearing and before the Employment Security Division. Ms. Owens filed her notice of cross-appeal on April 22, 1996, which recited that she was appealing the trial court's March 12 judgment. On April 4, 1996, the trial court entered an order denying Ms. Owens's request for attorney's fees for representation in the circuit court action.

The district asserts that Ms. Owens's claim for attorney's fees for the circuit court representation is procedurally barred since she did not appeal the April 4 order. We agree, as we have held that the issue of attorney's fees is a collateral matter. *Mason v. Jackson*, 323 Ark. 252, 914 S.W.2d 728 (1996). Because no notice of appeal was filed from the April 4 fee order, we will not review this issue.

■ Regarding the attorney's fees issue pertaining to the board and Employment Security Division representation, neither was a civil action. *See Sosebee v. County Line Sch. Dist.*, 320 Ark. 412, 897 S.W.2d 556 (1995). Thus, the attorney's fees statute, Ark. Code Ann. § 16-22-308 (Repl. 1994), does not apply, and the trial court was correct in denying Ms. Owens's request in his March 12 order. Based on the foregoing, we affirm the decision of the trial court.

Affirmed on direct appeal; affirmed on cross-appeal.

BROWN, J., concurs.

CORBIN, J., dissents.

ROBERT L. BROWN, Justice, concurring. I agree with Justice Corbin that the majority of the court construes Ark. Code Ann. § 6-17-1510(c) erroneously; however, the majority, in my

view, was correct in determining that the school district had failed to comply strictly with Ark. Code Ann. § 6-17-1507(c) (Repl. 1993). For that reason, I concur in the judgment.

The court interprets § 6-17-1510(c) to require two separate votes. Section 6-17-1510(c), however, provides no such thing:

> (c) Subsequent to any hearing granted a teacher by this sub-chapter, the board, by majority vote, shall make specific written conclusions with regard to the truth of each reason given the teacher in support of the recommended termination or nonrenewal.

Ark. Code Ann. § 6-17-1510(c) (Repl. 1993). This language only mandates that written conclusions be made by majority vote. As counsel for Owens conceded during oral argument, it is not impermissible for one vote to cover both the termination and the conclusions supporting the termination so long as the requirements of the Act are satisfied. Counsel for Owens merely disputed that one vote here was meant for both purposes.

Both school board member Richard Carvell and school board president Lennie Hogan testified that everyone on the board understood what was being voted on in the single vote following their two-hour closed session. The single vote, according to Carvell and Hogan, was to resolve whether the four grounds cited in the notice of termination were true and whether Ms. Owens should be terminated. The parties then stipulated that the other board members' testimony would match that of Carvell and Hogan. Added to this evidence is the follow-up letter from board president Hogan to Ms. Owens informing her that she had been terminated. In the letter, Hogan reported that the school board had unanimously concluded that the four grounds were true.

The Hogan letter coupled with the testimony from board members Carvell and Hogan provide unmistakable proof that the school board, by majority vote, made specific written conclusions regarding the truthfulness of the reasons given for the recommendation of termination in strict compliance with the statute. Nothing else was required to satisfy the elements of Ark. Code Ann.

§ 6-17-1510(c), and the majority errs in saying that more was required.

Nevertheless, the judgment should be affirmed on direct appeal under *Allen v. Texarkana Pub. Sch.*, 303 Ark. 59, 794 S.W.2d 138 (1990), and *Murray v. Altheimer-Sherrill Pub. Sch.*, 294 Ark. 403, 743 S.W.2d 789 (1988). In those cases, we recognized that teachers are entitled to rely on the "simple but complete" statement of reasons for nonrenewal or termination. *See* Ark. Code Ann. § 6-17-1507(c) (Repl. 1993).

In *Allen* we held that the school district failed to make a simple and complete statement of reasons for nonrenewal when specific acts in issue before the board were not mentioned in the recommendation of nonrenewal. We said:

> To allow the superintendent and the board to delve into ad libbed charges renders meaningless the requirements of sections 16-17-1507(b) [sic] and 16-17-1507(c) [sic], and our language in *Murray* that teachers are entitled to rely on a simple and complete statement of reasons as to nonrenewal of their contracts.

*Allen v. Texarkana Pub. Sch.*, 303 Ark. at 63, 791 S.W.2d at 140. This rationale applies equally well to the facts before us, and I agree that the Nettleton School District ran afoul of this principle when it presented two other reports of suspected drunkenness at school without providing proper notice to Owens.

DONALD L. CORBIN, Justice, dissenting. I dissent because I believe the majority's interpretation of Ark. Code Ann. § 6-17-1510 (Repl. 1993) is incorrect, especially given the facts presented in this case. During the hearing before the trial court, testimony was taken from board member Richard Carvell and board president Lennie Hogan. After hearing their testimony, the parties stipulated that the remaining board members would duplicate the statements of Carvell and Hogan; thus, their testimony was automatically received.

Both Carvell and Hogan testified that the board members understood that superintendent Sawyer's recommendation for Owens's termination was based upon the four reasons outlined in

the letter advising her of her suspension. Both members stated that they understood that the purpose of the special hearing was to consider the four issues listed in the letter of suspension. Both members stated that the board had discussed the four issues during executive session, and that when they had returned to the hearing on the record and Sawyer made his recommendation, they understood that they were voting on the four issues as discussed. Hogan testified further that he asked every board member if he understood what the board was voting on, and that everyone understood. Finally, when asked by the trial court what they would have done if they had not agreed with all four reasons for termination, both Carvell and Hogan indicated that had there been any doubt on any of the issues, they would have asked for an individual vote on each of the issues. There was no such doubt, as the board unanimously agreed to terminate Owens on the reasons presented. After the hearing, a letter reflecting the four grounds for termination was sent to Owens from Hogan.

In my opinion, the testimony by the board members indicates that the board complied with the statutory requirements set out in section 6-17-1510(c), which requires nothing more than a majority vote with written conclusions as to the truth of each reason given for termination. The majority's decision would require a separate majority vote on each of the four reasons given for termination. I interpret that section as requiring a majority vote to terminate with written conclusions on each separate reason given. Here, the school district complied with section 6-17-1510(c) in that the board unanimously voted to terminate Owens, after having discussed each of the four reasons for termination in executive session, and a follow-up letter reflecting each of the board's written conclusions was sent to Owens.

Notwithstanding the majority's conclusion that the district failed to give Owens proper notice of the two 1993 drinking incidents, I believe the majority's interpretation of section 6-17-1510(c) is unduly technical, and I respectfully dissent. Furthermore, I believe the fact that the district may not have given Owens notice as to the prior drinking incidents, does not warrant a determination by this court that the district acted arbitrarily or capriciously. To the contrary, any testimony concerning prior

incidents of Owens's intoxication on campus or at school activities was merely extraneous because the district based its determination to terminate Owens on the four grounds set out in the suspension letter.

In light of the trial court's finding that the school district had not acted arbitrarily, capriciously, or without a rational basis in terminating Owens from her employment, I would remand this case with instructions that the trial court enter an order in favor of the school district.