Victor Mature JACKSON *v.*
EL DORADO SCHOOL DISTRICT

CA 00-859                                                      48 S.W.3d 558

Court of Appeals of Arkansas
Divisions IV, I, and II
Opinion delivered July 5, 2001

*Mitchell, Blackstock, Barnes, Wagoner & Ivers*, by: *Emily Sneddon*, for appellant.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *William I. Prewett*, for appellee.

ANDREE LAYTON ROAF, Judge. Victor Mature Jackson appeals from an order of the Union County Circuit Court affirming his dismissal by the El Dorado School District, hereinafter "the District." On appeal, Jackson argues: 1) the circuit court erroneously applied a substantial compliance standard rather than strict compliance; 2) the District failed to comply with the law requiring a "simple but complete statement of the reasons" for a termination recommendation; and 3) the District failed to vote on the truth of each reason given to Jackson in support of the recommended termination. We conclude that the District failed to strictly comply with the procedural requirements of the Arkansas Teacher Fair Dismissal Act (ATFDA), and therefore, this case must be reversed.

Jackson had been a teacher with the District for twenty-two years. On February 3, 1999, a front-page article appeared in the local paper stating that Jackson had been arrested for theft by receiving and simultaneous possession of drugs with intent to deliver and handguns. The article also stated that police confiscated from Jackson's residence a quantity of marijuana, ten handguns, at least four "long guns,"and other consumer goods including televisions, VCRs, lawnmowers, and automobile parts and accessories.

The El Dorado Police Department prepared an incident report, dated February 2, 1999, that recited that Jackson's offenses were "theft by receiving" and "simultaneous possession of controlled substances w/int. to del/ handgun." In a section listing "types of criminal activity (max 3)," buying, distributing/selling, and possessing/concealing, were checked. A narrative by Detective Dykes recited that Jackson had consented to the search of his residence on February 2, 1999, and that a quantity of weapons and drugs were discovered in the search.

The day after the article appeared, the superintendent and another school official met with Jackson to discuss the charges in

the incident report. At the meeting, the superintendent gave Jackson a letter styled: "Notice of Termination and Suspension," notifying him of his immediate suspension as a teacher, and advising him that the superintendent would recommend to the school board that Jackson be terminated for the reasons stated in the police incident report and the February 3, 1999, newspaper article. Copies of the incident report and article were attached to the letter.

The District provided Jackson with a hearing before the school board on March 23, 1999. In a transcript of the school-board meeting that was made a part of the later hearing in circuit court, Detective Randy Dodd testified that after the department had received complaints about Jackson selling drugs and exchanging property for money, they approached Jackson at school and he admitted that he was running a loan business. They accompanied Jackson to his residence where he consented to a search, and they found a defaced handgun, a quantity of consumer merchandise, numerous cases of beer, and a bowl of "dime" bags of marijuana in plain view in a storage room. Detective Dodd stated that Jackson admitted that he had been running a pawn business for four years, but wanted to consult with an attorney before discussing the marijuana. Ultimately Jackson gave a statement to Detective Sgt. Phillips in which he admitted that he was selling drugs. The police department could not make a case that the pawned items were stolen and ultimately they were returned to Jackson. Jackson admitted that he did not have a pawn license, but claimed that he was unsure whether he needed one. Detective Dodd also testified that he had reports that someone was selling beer for Jackson on Sunday, but that investigation of that offense was outside the department's jurisdiction.

Doyle Woodall, principal at Northwest Elementary where Jackson taught, testified that he had to "talk to" Jackson about complaints of people "coming and going" on campus. Jackson's attorney objected to the presentation of "write-ups" concerning Jackson's visitors as being outside of what was contained in the notice, and the board was admonished not to consider them.

Jackson's brother, Grady Wayne Christopher, stated that he owned the marijuana found at Jackson's house and used it to manage his pain. Jackson admitted to operating what he called a "loan company," denied knowing that the defaced firearm was defaced, claimed he did not know that there was marijuana in his store room, stated that his firearms were locked up, denied making the statement to Sgt. Phillips, claimed he bought the beer from an

acquaintance who had bought it on a credit card and needed cash and that he sold it to friends who came to his house to watch ball games on his big-screen TV. Jackson admitted that he pled guilty to two of the criminal charges filed against him, ·operating a pawn shop without a license, and possession of a defaced firearm. Jackson was acquitted of the charge of possession of a controlled substance with intent to deliver.

At the conclusion of the hearing, the school board went into executive session and discussed the evidence. When it returned to regular session, the board voted six-to-two to terminate. Subsequently all board members signed a letter dated March 30, 1999, that recited the evidence presented at the March 23 hearing and stated in pertinent part that "the Board found the reasons as contained in the notice to you ... to be true and by a vote of six to two terminated your contract effective immediately." The letter further stated that:

> Specifically, the Notice states that if the charges as reported in the front page article of the *El Dorado News Times* dated February 3, 1999, are true, then cause exists for your termination in the District. The Board specifically finds that you were arrested as stated in the newspaper article, you had in your possession marijuana sufficient to warrant charging you with possession with intent to deliver, you had in your possession a defaced firearm, and evidence indicated you were operating a pawn shop without a license. Accordingly, the Board found the charges as stated in the newspaper article and as set forth in the Notice of February 5, 1999, from the Superintendent to you to be true.

> Accordingly and pursuant to the vote taken in the presence of your attorney following the hearing on March 23, 1999, your contract with the El Dorado School District is terminated as of 9:00 p.m. on March 23, 1999.

The letter was signed by all eight school-board members with the two dissenting members indicating "no" beside their names.

Jackson filed a complaint in circuit court that alleged in pertinent part that his termination was void because the District failed to strictly comply with the ATFDA in regard to the notice and voting procedure of the board, and that the board's decision to terminate him was arbitrary, capricious, and discriminatory. Jackson requested reinstatement, back pay, and attorney fees.

At the circuit court hearing, Jackson introduced depositions of the school-board members along with documentary evidence of his notice of termination. In the depositions, two of the eight board members testified that they voted against termination in essence because they did not believe that there was enough evidence at the time to determine if Jackson was guilty of the charges levied against him. Of the remaining members, four stated that they concluded that Jackson owned the marijuana found in his home and also that he had committed some of the other offenses that were discussed at the meeting, one testified that she was unable to decide about the marijuana, but voted to terminate based on the "perception problem" that retaining Jackson would create, and one other member stated that his "final vote" was "in favor of the superintendent's recommendation." Several board members testified that no consensus was reached in executive session, that no "straw vote" was taken on the various issues considered, and that matters not specifically contained in Jackson's written termination notice were discussed, including the sale of beer on Sunday, operation of an illegal pawn shop, and possession of a defaced weapon.

The circuit court upheld the school board's decision, finding that the allegations of running an illegal pawn business, possessing a defaced weapon, and the sale of beer were "related matters." The court found that Jackson had adequate notice of the charges, including the pawn shop charge, and that, even though acquitted of the drug charges, Jackson was "well aware of the basis for the recommendation," and he had "ample opportunity" to prepare a defense. In the order affirming Jackson's dismissal, the circuit court opined that because a majority of the board members felt that the marijuana belonged to Jackson or that he had knowledge of it, the outcome would have been the same, and without a showing of "prejudice," the alleged error in considering matters outside the scope of the notice was harmless. The trial court further found that the action of the board was not arbitrary and capricious within the meaning of the ATFDA. Jackson appeals from this order.

■■ The substantive portion of the Arkansas Teacher Fair Dismissal Act (ATFDA), Ark. Code Ann. § 6-17-1501 *et seq.* (Repl. 1993), allows a school district to terminate a teacher for any reason that is not arbitrary, capricious or discriminatory. Ark. Code Ann. § 6-17-1503 (Repl. 1993). A reason will be considered arbitrary and capricious only if it is not supportable on any rational basis. *Lee v. Big Flat Pub. Schs.*, 280 Ark. 377, 658 S.W.2d 389 (1983). The procedural part of the ATFDA mandates that a school district strictly comply with certain procedures in order to terminate or

non-renew a teacher. While it is not the function of the appellate court to substitute its judgment on renewal matters for either that of the circuit court or that of the School Board, whether or not a district has strictly complied is a question of law to be reviewed by the appellate court. *Hamilton v. Pulaski County Special School Dist.*, 321 Ark. 261, 266, 900 S.W.2d 205 (1995). If a school district fails to strictly comply with the procedures, then the termination is void. *Western Grove School Dist. v. Terry*, 318 Ark. 316, 885 S.W.2d 300 (1994).

We first address Jackson's argument that the district's termination notice failed to comply with the "simple but complete" notice requirement. He asserts that the notice only addressed two charges, theft by receiving and simultaneous possession of drugs with intent to deliver and handguns. However, other matters were considered by the board including: (1) incidents and reprimands in previous years in connection with persons coming on campus to communicate and engage in personal business with Jackson; (2) whether Jackson sold beer on Sundays; (3) whether Jackson was running a pawn shop without a license; (4) the perception that the publicity surrounding Jackson's arrest made it impossible to retain him as a teacher; (5) whether he was in possession of a defaced firearm; and (6) whether he was in possession of marijuana (regardless of whether there was an intent to deliver or simultaneous possession of a firearm). This argument has merit.

At all relevant times with regard to this case, the notice requirement of the Arkansas Teacher Fair Dismissal Act as set forth in Ark. Code Ann. § 6-17-1507 (Repl. 1993), provided:

> (a) A teacher may be terminated during the term of any contract for any cause which is not arbitrary, capricious, or discriminatory.

> (b) The superintendent shall notify the teacher of the termination recommendation.

> (c) The notice shall include a simple but complete statement of the grounds for the recommendation of termination and shall be sent by registered or certified mail to the teacher at the teacher's residence address as reflected in the teacher's personnel file.

As Jackson correctly notes, strict compliance with the notice provisions is required. *Hamilton v. Pulaski County Special School Dist., supra.*

Here, the notice document, consisting of the superintendent's letter and the attached February 3, 1999, newspaper article and police incident report, only gave Jackson notice that the District intended to dismiss him if the charges of theft by receiving and simultaneous possession of drugs with intent to deliver and firearms were "true." Jackson was not given notice about the illegal pawn business charge, the possession of a defaced firearm charge, or the illegal beer sale charge. The depositions of the school-board members and the board's letter to Jackson proved that these charges were discussed, included in the decision to terminate, and were at least as important as the charges of which Jackson had notice.

■ We are not unmindful of the dissent's contention that strict compliance with aspects of the ATFDA may be waived; however, we believe that their reliance on *Lester v. Mt. Vernon-Enola Sch. Dist.*, 323 Ark. 728, 917 S.W.2d 540 (1996) is misplaced. In *Lester*, the supreme court acknowledged that a waiver was *possible*, however, it rejected the argument that a waiver existed in that case because there was no evidence in the record that the appellant made a knowing and intelligent waiver of strict compliance with the time specified in the ATFDA in which to conduct a hearing before the school board. Significantly, the supreme court failed to find an effective waiver in *Lester* despite the fact that the appellant had requested a hearing "as soon as possible." Similarly, in the instant case, we can find no evidence whereby we can conclude that Jackson made a knowing and intelligent waiver of the notice requirement. Moreover, while it is true that Jackson admitted that officials from the District had discussed with him some of the additional charges that were to be presented to the school board, they apparently did not disclose all the charges, which would have rendered the notice infirm even under a substantial-compliance standard.

Jackson also argues that the termination vote is infirm because the District failed to vote on the truth of each reason given in support of the recommended termination. Citing *Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997), Jackson contends that the school board failed to strictly comply with the requirement that it make "specific written conclusions with respect to each of the reasons" for his termination and obtain a majority vote on each of the reasons. Jackson asserts that several board members voted to terminate based on reasons other than those that he received notice of in the superintendent's letter. Furthermore, he contends that the attempt to comply with the written-findings requirement by having the board sign a letter one week later did not

succeed because it was clear that there was not a vote on each reason, as required by *Nettleton*. This argument also has merit.

The portion of the ATFDA in question, Ark. Code Ann. § 6-17-1510(c) (Repl. 1993), provides as follows:

> Subsequent to any hearing granted a teacher by this subchapter, the board, by majority vote, shall make specific written conclusions with regard to the truth of each reason given the teacher in support of the recommended termination or nonrenewal.

■ In the instant case, it is apparent that the two reasons stated in the notice were not separately voted on. Moreover, as noted above, there were several additional reasons for Jackson's termination that were presented and considered at the hearing, which were also not separately voted on, and the only vote taken was when the board returned to open session. Once again, there was not strict compliance with the statute.

■ In *Nettleton Sch. Dist. v. Owens, supra*, the supreme court held that the school district did not strictly comply with Ark. Code Ann. § 6-17-1510(c), by "failing to obtain a majority vote with regard to the truth of each reason given to Owen in support of the recommended termination" and that this failure was "even more troublesome" in light of the District's consideration of incidents not included in her notice of termination in violation of Ark. Code Ann. § 6-17-1507(c). As in *Nettleton*, we have both the failure to give Jackson written notice of all the incidents considered at his termination hearing and the failure to conduct a separate vote on the truth of the reasons for his termination. Significantly, two of the three specific reasons listed in the Board's letter, possession of a defaced firearm and operation of a pawn shop without a license, were not included as grounds in the termination notice provided to Jackson. Accordingly, because the District failed to strictly comply with the ATFDA in both giving the required notice and in conducting a separate vote on each of the reasons for termination, we have no choice but to reverse the circuit court.

Reversed and remanded.

PITTMAN, GRIFFEN, VAUGHT, and CRABTREE, JJ., agree.

BIRD, ROBBINS, BAKER, and HART, JJ., dissent.

SAM BIRD, Judge, dissenting. I dissent from the majority's opinion reversing and remanding this case because I believe that the Union County Circuit Court's decision that the school-board action terminating appellant Victor Jackson, was not arbitrary, capricious, or discriminatory within the meaning of the Teacher Fair Dismissal Act, and I would affirm.

Arkansas Code Annotated section 6-17-1507 (Repl. 1993) requires that the notice of recommendation of a teacher's termination include "a simple but complete statement of the grounds for the recommendation of termination...." I disagree with the majority's conclusion that the notice given to Jackson did not meet that requirement. The notice, which was set forth in a letter from the superintendent to Jackson, stated, quite simply:

> You are hereby notified that El Dorado School District has received a copy of the attached Incident Report from the El Dorado Police Department and also reviewed the front page of the February 3, 1999, edition of the News Times (copy attached) with reference to your arrest on various charges. If these charges are true, cause exists for your termination in the District. Notice is hereby given that for the reasons stated in the Incident Report and newspaper article, as Superintendent I will recommend termination of your contract to the Board.

Attached to the letter was a copy of the referenced newspaper article and police incident report, which stated, quite simply, that Jackson had been arrested and charged with two offenses: (1) theft by receiving; and (2) simultaneous possession of a controlled substance with intent to deliver and handguns. The newspaper article noted that Jackson had been arrested after the police executed a search warrant at his home, where police confiscated marijuana, ten handguns, four long rifles, television sets, videocasette recorders, lawnmowers, automotive goods, and other items. Following the search, Jackson was transported to the police station for booking.

The majority concludes that the notice was not sufficient because neither the newspaper article nor the police incident report contained reference to the fact that Jackson was also charged with operating an illegal pawn business, possessing a defaced firearm, and the illegal sale of beer, and because these additional charges were discussed and considered important by the school-board members during their deliberations over whether to accept the superintendent's recommendation that Jackson be terminated.

I find nothing in the Teacher Fair Dismissal Act requiring that the school board, sitting in executive session, find that all of the reasons given by the superintendent in his notice to the teacher are true before it can vote to terminate a teacher's contract. Rather, the Act only requires that, subsequent to the hearing, "the board, by majority vote, shall make specific written conclusions with regard to the truth of each reason given the teacher in support of the recommended termination...." I would agree with the majority that the notice was insufficient if Jackson had been terminated solely on the basis of reasons not contained in the superintendent's notice. However, here, the majority of the school board found, specifically, that it was true that Jackson had in his possession a sufficient amount of marijuana to warrant charging him with possession of marijuana with intent to deliver. This is one of the reasons for recommending Jackson's termination that was given by the superintendent in his notice. The Board need only have found one of the superintendent's reasons for recommending Jackson's discharge to be "true" in order to accept his recommendation.

I also disagree with the majority's conclusion regarding the sufficiency of the notice because I believe that Jackson waived the requirement for strict compliance as to the notice. The supreme court has held that the requirement of strict compliance under the Teacher Fair Dismissal Act can be waived where there is proof that the party alleged to have waived the right has knowledge of the right. *Lester v. Mt. Vernon-Enola School Dist.*, 323 Ark. 728, 917 S.W.2d 540 (1996). Jackson testified before the circuit court that he met with Superintendent Watson, as well as director of personnel, Shirley Billingsley, and the principal of Jackson's school, Doyle Woodall, on February 4. Jackson said that they explained to him why he was being recommended for termination and that some of the reasons given to him at that meeting were in addition to the reasons set forth in the notice, including the fact that Jackson had been operating an illegal pawn business, that he had been selling beer out of his home and that Jackson was in possession of firearms, one of which had been defaced.

Jackson also testified at the circuit court hearing that he understood the charges that were being made against him that were not set out in the notice, stating, "There was no question in my mind about whether I understood it or didn't understand it. It didn't take a Philadelphia lawyer to understand it." Jackson did not object when testimony concerning his possession of a defaced firearm and operating a pawn business without a license was introduced. Jackson made no objection at the school-board hearing to the sufficiency of

the notice. Under these circumstances, I believe that Jackson has waived any objection to the sufficiency of the notice.

The majority opinion also relies upon *Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997), in reversing this case and in finding that the board failed to vote on the truth of each reason in support of the recommended termination. In *Nettleton*, the supreme court upheld the trial court's reversal of the school board's termination of a teacher's contract because the district did not strictly comply with section 6-17-1510(c) when the board failed to obtain a majority vote with regard to each reason given the teacher in support of the recommended termination.

I find *Nettleton* to be distinguishable from the case at bar. In *Nettleton*, evidence was presented regarding Owen's termination; the school board retired to executive session, then returned to open session to vote, taking one vote to accept the recommendation. Then the school-board president signed a letter outlining the reason's for Owen's termination. The president's signature was the only one on the letter.

In the case at bar, testimony was introduced by two board members that, although there was a vote taken in open session in support of accepting the superintendent's recommendation, the official vote was not recorded until the board members signed the letter stating their written findings as to why Jackson's contract was being terminated. Bob Watson, president of the board, stated:

> What my understanding is ... that what I was doing as a board member and each board member was doing was that we were voting on each individual charge or allegation that had been made against Mr. Jackson and that we were doing so by our signatures here on the last page.

Further Charles Cobb, one of the two board members who voted against terminating Jackson's contract, testified in a deposition, "[A]s I understand it, we all had to cast our votes officially by writing and it was given to me probably the next day or so and I was asked to sign it as to agreeing or disagreeing with it and that's why I put 'no' after my name."

Thus, unlike in *Nettleton* where only one vote was taken, in the case at bar an initial vote was taken to accept the superintendent's recommendation to terminate Jackson. That vote was then followed by a second vote of the board, in the form of a letter, by which each

board member voted as to the truth of each of the reasons given in support of the superintendent's recommendation. That letter reflects that six of the members of the board voted to find that the reasons for the recommendation were true, including the charge of possession of marijuana with intent to deliver. Two of the board members voted to find that the reasons given were not true. I believe that this procedure satisfies the requirements of the Act.

Because I believe that the circuit court was not clearly erroneous in finding that the school board provided a simple but complete notice and because a majority vote was taken with regard to each reason given Jackson in support of the recommended termination, I respectfully dissent from the majority's opinion.

I am authorized to state that Judges HART, ROBBINS, and BAKER join in this opinion.